**Linda MITCHELL, Plaintiff,**

v.

**Shirley S. CHATER, Commissioner of Social Security, Defendant.**

No. 94–CV–375A.

United States District Court,
W.D. New York.

Oct. 31, 1995.

David W. Covino, Buffalo, New York, for Plaintiff.

Patrick H. Nemoyer, United States Attorney, Buffalo, New York (Jane B. Wolfe, Assistant United States Attorney, of Counsel) Buffalo, New York, for the Government.

## ORDER

ARCARA, District Judge.

This case was referred to Magistrate Judge Carol E. Heckman, pursuant to 28 U.S.C. § 636(b)(1). The government moved for judgment on the pleadings and on November 21, 1994, filed a memorandum of law in support of said motion. On May 10, 1995, Magistrate Heckman filed a Report and Recommendation granting the government's motion for judgment on the pleadings.

Plaintiff filed objections to the Report and Recommendation on May 19, 1995. Oral argument on the objections was held on October 13, 1995.

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections have been made. Upon a *de novo* review of the Report and Recommendation, and after reviewing the submissions and hearing argument from the parties, the Court adopts the proposed findings of the Report and Recommendation.

Accordingly, for the reasons set forth in Magistrate Judge Heckman's Report and Recommendation, defendant's motion for judgment on the pleadings is granted.

IT IS SO ORDERED.

Filed May 10, 1995

REPORT AND RECOMMENDATION

HECKMAN, United States Magistrate Judge.

This matter was referred to the undersigned by the Hon. Richard J. Arcara, to hear and report, in accordance with 28 U.S.C. § 636(b). Plaintiff initiated this action to seek review of the final decision of the Secretary of Health and Human Services (the "Secretary") denying her application for disability insurance benefits, and the Secretary has moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). For the following reasons, the Secretary's motion should be granted.

### BACKGROUND

Plaintiff was born August 2, 1950 (T. 185).[1] She has a twelfth grade education (T. 186). She attended business school full-time from July, 1990 through March, 1991, and took courses in word processing, secretarial skills and accounting (T. 186, 221). She graduated from the business school with a 4.0 average (T. 65, 186).

Plaintiff filed her application for disability insurance benefits in October, 1991, alleging disability as a result of a neck injury suffered in an automobile accident on May 20, 1990 (T. 34–37). At the time of the accident, plaintiff was a hostess/housekeeper at Howard Johnson's Motor Lodge in Niagara Falls, New York (T. 187). She had been employed there since May, 1985, but had not worked since November, 1989 due to a previous injury to her back (T. 36).

The medical evidence shows that she was admitted to Niagara Falls Memorial Medical Center on May 20, 1990 (T. 109). X-rays taken of her cervical spine showed normal alignment and disc spacing, with no fracture, dislocation or arthritic changes (T. 149). She was diagnosed with left hip and neck sprain, and was discharged the same day with a soft cervical collar and prescription for Motrin and bed rest (T. 109).

On May 23, 1990, Plaintiff was seen by Dr. James Wopperer. Examination of her spine showed full range of movement, with tenderness localized on both sides of the base of the cervical spine. There was no para-spinal muscle spasm. She had full range of movement of her shoulders. Neurological testing revealed no deep tendon reflex asymmetry or strength deficits. Dr. Wopperer's impression was acute cervical sprain with blunt injury to the left thigh. He recommended rest with continued use of anti-inflammatory medication and cervical collar, and no work "until she is strong enough and asymptomatic enough to do her type of job" (T. 112).

Dr. Wopperer examined plaintiff again on June 21, 1990. Plaintiff was doing much better with physical therapy. On examination there was full range of motion of the cervical spine, performed with caution. She had bilateral mild tenderness over the paraspinal muscle region. She was advised to continue physical therapy (T. 112–13).

On July 30, 1990, Dr. Wopperer noted that plaintiff was still complaining of cervical pain. There were no neurological deficits and bone scan, x-rays and MRI results were all negative. Dr. Wopperer referred plaintiff to Dr. James White, an orthopedic and spine surgeon (T. 114).

---

**1.** References preceded by "T" are to page numbers of the transcript of the administrative record, filed by the Secretary as part of her answer to the complaint.

Dr. Wopperer examined plaintiff again on October 18, 1990. He noted her continued complaints of pain, now more within the right posterior iliac spine region radiating into her right leg. On examination there was full range of movement in the neck with no paraspinal muscle tenderness or spasm. She had improved markedly since her injury, and Dr. Wopperer discontinued cervical spine treatment. He felt it would be worthwhile for her to be seen by Dr. White (T. 113).

Dr. White examined plaintiff on November 27, 1990. He noted her continued complaints of pain in the neck area, along the interscapular region of the thoracic spine, and across her shoulders. She was attending business school, but was having difficulty due to discomfort in her neck when she looked down while typing (T. 126). On examination, Dr. White noted some tenderness in the cervical spine at approximately the C-5 and C-6 region. Her neurological exam was normal. There was limitation of left lateral flexion and rotation, and discomfort increased with extension and compression of the cervical spine. New x-rays showed definite abnormality of the spine. Dr. White's impression was cervical disc injury at the C5-6 region. He recommended an MRI to "further delineate the pathology.... [H]er symptoms and findings are real and related to her previous automobile accident" (T. 127).

An MRI was taken on December 5, 1990. It showed changes at levels C6-7 consistent with central spondylosis, possible small central herniation of the nucleus pulposus and mild degree of spondylosis at the 5-6 level, with no deformity of the spinal cord (T. 125).

Dr. White examined plaintiff again on March 11, 1991. She had significant pain with extension and head compression maneuver. Dr. White felt that her symptoms were arising from the C5-6 level, and that she would need an anterior cervical discectomy and fusion. He scheduled her for diagnostic discography and CT scan of the cervical spine (T. 124). These procedures were performed at the Buffalo General Hospital on April 4, 1991, and showed degenerative disc disease, mild osteophyte formation, and herniation at C4-5 and C5-6 (T. 84, 90-91).

Plaintiff was admitted to Buffalo General on June 4, 1991 for elective surgery consisting of anterior C4-5 and C5-6 discectomies, anterior C5 corpectomy, and fusion of C4 through C6 (T. 96-97). She tolerated the procedure well, and was discharged on June 10, 1991 wearing a four-poster brace (T. 94).

On July 5, 1991, Dr. White reported that plaintiff had done well following surgery. Her neurological exam was normal and her incisions were healing. Her condition was improved. She continued to wear her orthosis (T. 121).

In a letter to plaintiff's insurance carrier dated August 5, 1991, Dr. White expressed his surprise that plaintiff had been disabled due to lower back pain prior to her car accident in May, 1990. He reported that plaintiff was doing "quite well" after surgery, "but as I told her, I can make her better, but I certainly will not make her normal" (T. 120).

On December 9, 1991, plaintiff reported that her condition was "horrible" (T. 135). The surgery had helped, and at least she was not getting worse. X-rays showed that the C4-C6 area had healed. Plaintiff was referred for physical therapy (*id.*).

Plaintiff attended seven sessions of physical therapy during December, 1991 and January, 1992. She canceled four sessions and did not show up for two (T. 129). Physical therapist Curtis B. DuBois reported that plaintiff complained that her head was heavy and she had soreness after the rigid brace was removed in September, 1991 (T. 129-31). She obtained some relief lying on the couch, and occasionally wore the soft cervical collar. She showed moderate limitation of cervical motions, with limited range of shoulder movement and pain on the right. These movements improved during the course of therapy, although she still had limitation of right shoulder internal rotation. He noted restriction of her ability to look down, and advised against lifting, pulling or office work (T. 129). Her last physical therapy session was January 10, 1992, and she was instructed on home exercises (T. 131).

Dr. Sigmund Nadler examined plaintiff on June 29, 1992 on behalf of the New York

State Department of Social Services Office of Disability Determinations. Dr. Nadler noted that plaintiff still had pain in her neck with occasional swelling. She had previously been advised not to push, pull or lift heavy objects. She was not wearing her cervical collar and was not taking physical therapy. On examination, Dr. Nadler noted that the cervical spine was markedly tender bilaterally with a well-healed cervical scar. There was bilateral mild muscle spasm. She was able to flex her cervical spine 30% of the distance to her chest, hyperextend 20 degrees and rotate 60 degrees to both the right and left. Range of motion of both upper extremities was within normal limits. She had good strength in upper extremities except that she could not push or pull a weight. Her hand grip was excellent and reflexes were normal. Dr. Nadler's impression was "cervical disc disease" (T. 137). An x-ray taken on June 29, 1992 showed fusion of the C4 through C6 vertebrae with "good union" (T. 138).

On October 21, 1992, plaintiff was examined by Dr. Samuel Sirianni, who indicated that plaintiff's ability to perform work-related physical activities was limited. She could occasionally (up to ⅓ of a work day) lift and carry no more than five pounds, and she could stand and/or walk for up to six hours. He also noted limitations of plaintiff's ability to push and/or pull (T. 142), as well as her ability to cook, clean and shop (T. 145).

Meanwhile, on July 21, 1992, plaintiff's application for disability insurance benefits was denied (T. 38–40). Her request for reconsideration was likewise denied (T. 55–57). Plaintiff requested a hearing to review the denial of her claim. A hearing was held on June 3, 1993 before Administrative Law Judge ("ALJ") Karen H. Baker. Plaintiff testified at the hearing and was represented by counsel. Vocational expert Connie Giacomozzo also testified (T. 180–227).

Upon the request of ALJ Baker, plaintiff's counsel supplemented the hearing record with a letter from Dr. White dated July 15, 1993 (T. 163–64). In that letter Dr. White stated that he performed a "final follow-up" examination of plaintiff on July 9, 1993, essentially two years after her operation. Plaintiff was better overall, although she had complaints of cervical discomfort, especially with changes in the weather and whenever she does any prolonged reading or writing with her head in a flexed position. Upon examination she was able to flex and extend her chin from 7 cm. to 16 cm. from the suprasternal notch. She had approximately 80 degrees of lateral rotation. Deep tendon reflexes in the upper extremities were normal. There was no motor weakness. She complained of some decreased sensation to pinprick in the right fifth finger. X-rays showed solid fusion from C4 through C7 with a tri-cortical iliac graft from C4 to C6 (T. 163).

In Dr. White's opinion, plaintiff had reached maximum benefit from her medical care. He noted that her symptoms of discomfort could be controlled reasonably well with anti-inflammatory medications. He noted restrictions "in terms of position of her head, and use of the extremities at or above the shoulder level...," and advised her to avoid positions of prolonged or lateral flexion of the cervical spine. According to Dr. White, plaintiff "should be able to perform light to sedentary activities." He considered her disability to be "moderate in nature at this time" (T. 164).

On November 24, 1993, ALJ Baker issued her decision finding that plaintiff was not entitled to disability insurance benefits (T. 9–22). The Appeals Council denied plaintiff's request for review (T. 4–5), and plaintiff filed this action on May 17, 1994.

### DISCUSSION

The Social Security Act states that, upon review of the Secretary's decision by the district court, "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g) (1991). Substantial evidence is defined as evidence which a " 'reasonable mind might accept as adequate to support a conclusion' ". *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938)); *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991). Under these standards, the scope of

judicial review of the Secretary's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Secretary. *Richardson, supra,* 402 U.S. at 401, 91 S.Ct. at 1427. The court's sole inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Secretary. *Sample v. Schweiker,* 694 F.2d 639, 642 (9th Cir.1982).

In this case, the ALJ found that plaintiff was not disabled within the meaning of the Social Security Act. The term "disability" is defined at 42 U.S.C. § 423 as follows:

(1) The term "disability" means—

(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months....

(2) For purposes of paragraph (1)(A)—

(A) An individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work....

42 U.S.C. § 423(d)(1)(A), (d)(2)(A).

In evaluating whether a claimant meets these statutory requirements for the purpose of disability insurance benefits, the Secretary follows a five step sequence. This five step sequence, as stated at 20 C.F.R. § 404.1520, is as follows:

1. An individual who is working and engaging in substantial gainful activity will not be found to be disabled regardless of medical findings;

2. An individual who does not have a "severe" impairment will not be found to be disabled;

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of disabled will be made without consideration of vocational factors;

4. If an individual is capable of performing work he or she has done in the past, a finding of not disabled must be made;

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Following this sequence in this case, ALJ Baker reviewed the medical evidence in the record and concluded that plaintiff's cervical impairment, while significant, did not approach the severity of any impairment listed in Appendix 1 of the Secretary's regulations (T. 15). The ALJ also found that plaintiff was unable to return to her past relevant work as a hotel maid (T. 20). Plaintiff does not challenge these findings.

Once the claimant shows that her impairment renders her unable to perform her past work, the burden shifts to the Secretary to show that there is other gainful work in the national economy which the claimant could perform. *Carroll v. Secretary of Health and Human Services,* 705 F.2d 638, 642 (2d Cir.1983). In making this showing, the Secretary must evaluate the claimant on the basis of age, education, physical ability and work experience. 42 U.S.C. § 423(d)(2)(A). Further, in determining the claimant's physical ability, or residual functional capacity, the Secretary must consider objective medical facts, diagnoses and medical opinions based on such facts, and subjective evidence of pain or disability testified to by the claimant or others. *Ferraris v. Heckler,* 728 F.2d 582, 585 (2d Cir.1984); *Carroll, supra.*

In particular, the Secretary must give considerable—and if uncontradicted, conclusive—weight to the expert opinions of the claimant's own treating physicians. Moreover, in making any determination as to a claimant's disability, the Secretary must explain what physical functions the claimant is capable of performing.

*Ferraris, supra* (citations omitted).

■■ The Second Circuit has interpreted these rulings to require that, in order to sustain her burden of showing that the claimant can perform sedentary work, the Secretary must proffer specific medical evidence that the plaintiff can meet the exertional demands necessary to maintain sedentary work. *Nelson v. Bowen*, 882 F.2d 45, 48 (2d Cir.1989); *Carroll, supra*, 705 F.2d at 643; *Martin v. Shalala*, No. 91–CV–730E(H), slip op. at 9, 1994 WL 263818 (W.D.N.Y. June 10, 1994). As stated in *Nelson:*

> [T]he Secretary cannot sustain [her] burden without a showing that the claimant engages in activity for sustained periods of time comparable to those required to maintain a sedentary job, ... especially in light of the Secretary's own ruling explaining that sedentary work requires "that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will...."

*Nelson v. Bowen, supra*, 882 F.2d at 48–49 (citing *Carroll, supra*, 705 F.2d at 643; quoting Social Security Ruling (SSR) 83–12, 1983 WL 31253 at *4). In cases where the claimant's ability to perform the full range of sedentary work is limited, the Secretary should consult a vocational specialist to clarify the implications for the occupational base. SSR 83–12, 1983 WL 31253 at *4.

■ Upon review of the administrative record, I find that the ALJ properly assessed plaintiff's ability to perform substantial gainful activity. The ALJ found that plaintiff had the residual functional capacity to perform the physical exertional requirements of light [2] or sedentary work [3] except for work involving the occasional lifting or carrying of objects over five pounds, standing for more than six hours during the course of an eight hour work day, pushing or pulling with the upper extremities, and looking down only occasionally (T. 20). In making this determination, the ALJ accorded "great weight" to the opinion of Dr. White, as stated in his July 15, 1993 letter, that plaintiff was only moderately disabled and "should be able to perform light to sedentary activities" (T. 164). Under the Secretary's regulations, which are binding on this court, *see Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir.1993), a treating source's opinion regarding the nature and severity of the claimant's impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2).

Plaintiff claims that this same July 15, 1993 letter from Dr. White provides conclusive evidence of her disability. She cites Dr. White's advice to avoid certain positions of prolonged flexion of the cervical spine "because there will be increased stress above and below the fusion mass," and his opinion that this would restrict the positioning of her

---

**2.** 20 C.F.R. § 404.1567(b) provides:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

**3.** 20 C.F.R. § 404.1567(a) provides:

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

head and the movement of her upper extremities (T. 164). However, as the ALJ properly noted, Dr. White concluded that these restrictions did not prevent her from performing "light to sedentary activities" (*id.*).

■ Plaintiff also claims that, based on this evidence of significant limitation of her ability to perform the full range of sedentary activities, the ALJ was required to find her to be disabled under 20 C.F.R. Part 404, Subpart P., Appendix 2, § 201.00(h).[4] I disagree. § 201.00(h) is contained in the introductory sections preceding the medical-vocational guidelines, or "grids," to which the Secretary refers in particular cases to determine whether a significant number of jobs exist in the national economy that the claimant could perform. It explains the term "younger individual" as used in the grids, and gives examples as to how the Secretary might or might not accord weight to a claimant's age in determining whether work exists that the claimant could perform. Contrary to plaintiff's position on this point, § 201.00(h) does not *require* a finding of disabled for an individual, like plaintiff, who has demonstrated the inability to perform the full range of sedentary work.

■ Moreover, because the medical evidence showed that plaintiff could not perform the full range of either light or sedentary work, the ALJ properly relied on the testimony of vocational expert Connie Giacomozzo to make an individual assessment as to whether there were any jobs in the economy that plaintiff could perform given her physical limitations. *See, e.g., Rivera v. Sullivan,* 771 F.Supp. 1339, 1353 (S.D.N.Y.1991); *Valenti v. Secretary of Health and Human Services,* 600 F.Supp. 54, 57 (E.D.N.Y.1984). Ms. Giacomozzo testified that a person of plaintiff's age with similar functional restrictions, educational background and experience "might be able to perform" work in the national economy, primarily in jobs of a clerical nature (T. 218–26).

■ Plaintiff argues that the vocational expert's testimony is legally insufficient to support the ALJ's finding that there are a significant number of jobs in the economy that plaintiff could perform. However, the Secretary's regulations and rulings, and cases in this Circuit discussing the Secretary's discharge of her burden at step five of the sequential evaluation, do not require the vocational expert to make an explicit finding that the claimant has the actual ability or functional capacity to perform work in the economy. That responsibility at all times rests with the ALJ. *Dumas v. Schweiker,* 712 F.2d 1545, 1553–54 (2d Cir.1983). In making this determination, the ALJ "may use the services of a vocational expert or other specialist." 20 C.F.R. § 404.1566(e). The vocational expert's role in such cases is to

assess the effect of any limitation on the range of work at issue (e.g., the potential occupational base); advise whether the impaired person's RFC permits him or her to perform substantial numbers of occupations within the range of work at issue; identify jobs which are within the RFC, if they exist; and provide a statement of the incidence of such jobs in the region in which the person lives or in several regions of the country.

SSR 83–12, *supra,* 1983 WL 31253 at *3. "The vocational expert is just that, a vocational expert. The ALJ is responsible for determining, based on all the evidence, the claimant's physical capabilities." *Dumas v. Schweiker, supra,* 712 F.2d at 1553 n. 4; *see also Nelson v. Secretary of Health and Human Services,* 676 F.Supp. 44, 47 (W.D.N.Y. 1987) (where full range of light work is significantly diminished, ALJ should require vocational expert testimony tending to establish the existence of jobs in the national economy for an individual with plaintiff's limitations).

My review of the record indicates that the ALJ properly discharged her burden in accordance with these requirements. She asked the vocational expert whether there

---

4. 20 C.F.R. Part 404, Subpart P., Appendix 2, § 201.00(h) provides, in relevant part:
   [A] finding of disabled is not precluded [by the medical-vocational guidelines] for those individuals under age 45 who do not meet all of the criteria of a specific rule and who do not have the ability to perform a full range of sedentary work.

.was any work in the economy for an individual of plaintiff's age with similar educational experience and physical limitations, including the inability to lift more than five pounds frequently or to look down or bend her head frequently (T. 219). The vocational expert stated that, "[w]ith the inability to look down for any length of time, the work would be extremely limited, if at all" (*id.*). However, when the ALJ asked whether there were jobs that did not require the individual to bend her head "all the time," the vocational expert stated that there were "some types of clerical jobs that she might be able to perform ..." (T. 220). Upon the ALJ's request subsequent to the hearing, the vocational expert specifically identified the jobs of general office clerk, accounting clerk and jewelry salesperson, and stated that each of these jobs existed in significant numbers both locally and nationally (T. 174).

Relying on this information in conjunction with the medical evidence, the ALJ concluded that plaintiff "can be expected to make a vocational adjustment to work which exists in significant numbers in the national economy ..." (T. 19). This conclusion reflects proper utilization of the vocational expert's testimony, and is supported by substantial evidence.

Plaintiff also objects to the Secretary's failure to consider how plaintiff's complaints of pain impact on her ability to perform work activities. It is incumbent upon the ALJ to evaluate the effect of pain on a claimant's ability to function. *Foster v. Heckler*, 780 F.2d 1125, 1128 (4th Cir.1986). The standard for evaluating pain has been incorporated into the Social Security Act as follows:

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability ...; there must be medical signs and findings ... which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished ..., would

lead to a conclusion that the individual is under a disability.

42 U.S.C. § 423(d)(5)(A).

■ Under the Secretary's interpretive guidelines, once a medically determinable physical impairment is documented, the effects of pain must be considered at each step of the sequential evaluation process. *See* SSR 88–13, 1988 WL 236011 (SSA) at *1. When evaluating the claimant's complaints of pain in assessing residual functional capacity at step five, the ALJ

> must give full consideration to all of the available evidence, medical and other, that reflects on the impairment and any attendant limitations of function. The RFC assessment must describe the relationship between the medically determinable impairment and the conclusions of RFC which have been derived from the evidence, and must include a discussion of why reported daily activity restrictions are or are not reasonably consistent with the medical evidence.

*Id.*, 1988 WL 236011 at *3.

■ While an ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment regarding that pain, she must do so in light of medical findings and other evidence regarding the true extent of the pain alleged. *Mimms v. Heckler*, 750 F.2d 180, 186 (2d Cir.1984) (citing *McLaughlin v. Secretary of Health, Education and Welfare*, 612 F.2d 701, 705 (2d Cir.1980); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979)). Thus:

> In instances in which the adjudicator has observed the individual, the adjudicator is not free to accept or reject that individual's subjective complaints solely on the basis of such personal observations. Rather, in all cases in which pain is alleged, the determination or decision rationale is to contain a thorough discussion and analysis of the objective medical evidence and the nonmedical evidence, including the individual's subjective complaints and the adjudicator's personal observations. The rationale is then to provide a resolution of any inconsistencies in the evidence as a whole and

set forth a logical explanation of the individual's capacity to work.

SSR 88–13, *supra,* 1988 WL 236011 at *3.

In this case, ALJ Baker found plaintiff's testimony regarding her debilitating pain unreliable, for several reasons. The ALJ referred to several discrepancies between the plaintiff's testimony at the hearing and the evidence in the record, such as her testimony that she was in good health and worked at Howard Johnson's right up until the time of her car accident in May, 1990, and her testimony that she stopped going to physical therapy in January, 1992 because the pain was too severe. The ALJ focused primarily on the absence from the record of any documented complaints of the type of "devastating symptoms" plaintiff testified to at the hearing. She found that the functional limitations placed on plaintiff by her treating physicians took into account her alleged discomfort, and led to the reasonable conclusion that plaintiff was not totally disabled from any and all forms of work (T. 16–17). My review of the record indicates that this analysis is in accordance with the legal and regulatory requirements outlined above, and is supported by substantial evidence.

Accordingly, I find that the record read as a whole yields such evidence as would allow a reasonable mind to accept the Secretary's conclusion that plaintiff is not entitled to a period of disability or disability insurance benefits.

## CONCLUSION

For the reasons set forth above, it is recommended that the Government's motion for judgment on the pleadings (Item 6) be granted.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED,** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).

■ The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. *See, e.g., Paterson–Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985 (1st Cir.1988).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek, et al. v. Canadair Ltd., et al.,* 838 F.2d 55 (2d Cir.1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." *Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.*

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorney for the plaintiff and the attorney for the defendant.

**SO ORDERED.**

DATED: Buffalo, New York
     May 9, 1995