Jose **VASQUEZ–ORTIZ**, Plaintiff,

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

No. 97–CV–90H.

United States District Court,
W.D. New York.

Feb. 26, 1999.

Alan B. Block, Buffalo, NY, for Plaintiff.

Jane B. Wolfe, United States Attorney, Buffalo, NY, for Defendant.

## DECISION & ORDER

HECKMAN, United States Magistrate Judge.

In accordance with the provisions of 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct any and all further proceedings in the above captioned matter (Item 24). Plaintiff commenced this action pursuant to 42 U.S.C. § 405(g) in order to challenge the determination of the Social Security Appeals Council. Both plaintiff and defendant move for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Items 12, 15, 18). Defendant also moves to amend the prior motion for judgment on the pleadings, seeking to remand the proceedings to the Commissioner of Social Security for further administrative proceedings pursuant to the sixth sentence of 42 U.S.C. § 405(g) (Item 21).

The Administrative Law Judge in this case erroneously substituted his opinion for that of legally competent medical experts. Furthermore, the record supports a finding that plaintiff is entitled to bene-

fits. When the record supports a finding that a claimant is entitled to benefits, the appropriate remedy is to reverse the decision of the Commissioner of Social Security and remand the case for calculation of benefits. Therefore, plaintiff's motion is granted and the case is remanded to the Commissioner for calculation of benefits.

## BACKGROUND

Plaintiff is a 45 year old Hispanic male who spent most of his life in Puerto Rico. While the record is unclear as to the amount of school plaintiff actually completed, it is clear that plaintiff did not complete a basic elementary education.[1] In Puerto Rico, plaintiff was employed as a farm laborer, cutting sugar cane and picking tobacco (R. at 178, 195). Plaintiff has not held a job since leaving Puerto Rico. He does not drive, and is unable to take the bus by himself. Plaintiff speaks Spanish, and his English speaking abilities are limited to a small number of phrases.

Plaintiff alleges that he is disabled due to chronic back problems, recurring migraine headaches, alcoholism, and a nervous disorder (R. at 174, 191). In further support of his appeal of the ALJ's decision, plaintiff's representative points out that plaintiff is mentally retarded (R. at 5). In consideration of plaintiff's application for Supplemental Security Income (SSI), plaintiff's physical, mental, and psychological health was evaluated by several physicians and psychologists.

Dr. Salvatore Galante's medical evaluation of plaintiff found no significant medical findings related to plaintiff's back (R. at 236–39). Plaintiff had "full range of motion in extension/flexion and side bending and twisting. [He][w]alks on both heels and toes without any discomfort. Straight leg raising sign is negative" (R. at 237). The x-rays showed a degenerative fact joint arthropathy at L5–S1 (R. at 238). However, the radiologist concluded that it was otherwise a normal examination (R. at 238). Dr. Galante noted that plaintiff was also being treated for cluster headaches (R. at 237).

Dr. Paul Akman examined the plaintiff on April 23, 1994 (*See* R. at 241–45). Plaintiff told Dr. Akman about his alcoholism, sleeplessness, and hallucinations, as well as being on medication for cluster headaches (R. at 241–42). Dr. Akman indicated that the findings of plaintiff's physical examination were compatible with degenerative arthritis of the lumbar spine (R. at 244). He also concluded that plaintiff "is obviously an alcoholic" (R. at 244). However, Dr. Akman found no limitation on employability (R. at 243).

On June 23, 1994, plaintiff was examined by Dr. Won Hoon Park (*See* R. at 246–48). Dr. Park, who is a member of the American Board of Psychiatry and Neurology, found plaintiff in need of a comprehensive treatment program, including detoxification and rehabilitation (R. at 247). Plaintiff was diagnosed as being alcohol dependent, and having possible borderline intellectual functioning (R. at 247).

The record further indicates that, in another mental health examination, plaintiff had been diagnosed a paranoid schizophrenic, and it was noted that he suffers from alcohol abuse (R. at 249). Plaintiff was prescribed thorazine, and was referred to a Spanish speaking agency to get plaintiff into a detoxification program and a day treatment program for Spanish speakers.

In an effort to resolve the issue of plaintiff's intellectual functioning, a consultative examination was conducted by a certified

---

1. The record is unclear as to what elementary school grades plaintiff actually completed. Plaintiff told the ALJ that he started, but did not complete, the second grade (R. at 85). One disability report indicates that plaintiff completed the third or fourth grade (R. at 195). Another disability report indicates that plaintiff completed the fifth grade (R. at 178). When the ALJ questioned plaintiff about these discrepancies, plaintiff stated that he only "went up to the second grade" (R. at 86). Plaintiff gave the same answer to Dr. Parker, a psychologist who evaluated plaintiff (R. at 257).

clinical psychologist, Thomas C. Dickinson. Ph.D. Dr. Dickinson had the impression that plaintiff was borderline retarded, and that he could suffer from anxiety disorder and alcohol dependency (R. at 254). Using the Weschsler Adult Intelligence Scale, plaintiff earned scores that would place him in the moderately retarded range in comparison with his age peers (R. at 253). Other intelligence tests lead to similar results (*See* R. at 253). According to Dr. Dickinson, plaintiff was unable to do simple things like read alphabet letters or simple numbers such as "3" and "5," and he could not count a set of seven pennies. Plaintiff was unable to tell Dr. Dickinson how many months made up a year, the colors of the American flag, name the President of the United States or the Mayor of Buffalo, or match block patterns or assemble simple puzzles of a boy or a face (R. at 253).

Following a second psychological examination, Dr. Mitchell Parker concluded that he was unable to assess plaintiff's intellectual potential (R. at 256). Because of plaintiff's inability to complete the tests due to fear and anxiety, Dr. Parker concluded that his assessment could not be seen as a "valid estimate" (R. at 256). However, Dr. Parker was left with the impression that plaintiff was a man with extremely limited abilities (R. at 257).

## PROCEDURAL HISTORY

Plaintiff filed an application for Supplemental Security Income (SSI) on February 11, 1993 (R. at 125–28). Plaintiff's request for SSI was based on complaints of migraine headaches and back problems. The Social Security Administration denied plaintiff's request on July 8, 1993 (R. at 129–37). It was explained that plaintiff's condition was not severe enough to keep him from working based on his age, education, training, and work experience (R. at 137).

Rather than appeal the July 8, 1993, decision, plaintiff filed a new application for SSI on February 22, 1994 (R. at 147–53). Plaintiff's second application was denied on March 4, 1995 (R. at 154–57). On May 3, 1995, plaintiff filed a request for reconsideration, arguing that the Social Security Administration's determination was "contrary to the law and facts" (R. at 158–59). On June 28, 1995, the Social Security Administration affirmed the prior finding that plaintiff was not disabled (R. at 170–73).

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ") on September 6, 1995, and a hearing was held on December 4, 1995 (*See* R. at 68–124). On March 26, 1996, the ALJ, Bruce R. Mazzarella, issued a decision holding that plaintiff was not entitled to SSI on March 26, 1996 (R. at 34–60). The ALJ found that plaintiff's allegations of migraine headaches and back pain were out of proportion to the clinical and laboratory findings. In addition, the ALJ found that plaintiff's "alleged complaints and functional limitations are grossly exaggerated, inconsistent over time and with his physical appearance, and unsupported by medical evidence" (R. at 59). Based on plaintiff's "functional capacity, age, education, and work experience," the ALJ concluded that plaintiff is not disabled (R. at 59).

Plaintiff requested review of the ALJ's decision (R. at 29–31). Plaintiff's request was denied by the Social Security Appeals Council on October 4, 1996 (R. at 26–27). Additional correspondence and evidence was then sent to the Appeals Council on plaintiff's behalf (R. at 5–25). On December 17, 1996, the Appeals Council notified plaintiff that it would stand by its initial decision (R. at 4).

On February 18, 1997, plaintiff filed this action pursuant to 42 U.S.C. § 405(g). Defendant moved for judgment on the pleadings pursuant to Rule 12(c), and plaintiff cross-moved for judgment on the pleadings (Items 12, 15, 18). Defendant then moved to amend the prior motion for judgment on the pleadings, seeking to remand the proceedings to the Commission-

er of Social Security for further administrative proceedings pursuant to the sixth sentence of 42 U.S.C. § 405(g) (Item 21). Oral argument was held before the undersigned on November 5, 1998. In addition, the parties supplemented the record by filing letter briefs with the court on December 10, 1998 (Items 25, 26).

## DISCUSSION

### I. Scope of Judicial Review

▪ A party may seek review of decisions made in a hearing by the Commissioner of Social Security in district court. 42 U.S.C. § 405(g). As part of the Commissioner's answer, the Commissioner is required to

file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and ... the court shall review only the question of conformity with such regulations and the validity of such regulations.

*Id.* Substantial evidence is defined as evidence which a "reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *see also Diaz v. Shalala,* 59 F.3d 307, 314 (2d Cir.1995). Therefore, the scope of judicial review is limited. *Mitchell v. Chater,* 918 F.Supp. 675, 681 (W.D.N.Y.1995). It is not within the court's powers to determine whether the plaintiff is actually disabled. *Rivera v. Chater,* 942 F.Supp. 178, 182 (S.D.N.Y.1996). Instead, the court must consider "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclu-

sions reached" by the Commissioner. *Sample v. Schweiker,* 694 F.2d 639, 642 (9th Cir.1982). The Commissioner's findings must be affirmed so long as they are not the product of legal error. *Rivera,* 942 F.Supp. at 182.

▪ The district court is not limited to just affirming, modifying, or reversing the Commissioner's decision. The court may,

on motion of the Commissioner ... remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405(g). Remand under sentence six of § 405(g) is appropriate when there is new evidence which is material, and there was good cause for failing to incorporate this evidence into the earlier proceeding. *Lisa v. Secretary of DHHS,* 940 F.2d 40, 43 (2d Cir.1991). It must be shown that this material is (1) new, and not cumulative of what is already found in the record, (2) "relevant to the claimant's condition," and (3) there must be good cause for failing to present this evidence in the earlier proceedings. *Id.; Tirado v. Bowen,* 842 F.2d 595, 597 (2d Cir.1988).

### II. Facts Support Finding of Disability.

▪ The underlying question is whether the Commissioner's findings are supported by substantial evidence. The Commissioner's findings of fact are conclusive when they are supported by substantial evidence on the record as a whole. *Schaal v. Apfel,* 134 F.3d 496, 501 (2d Cir.1998); *see also Geracitano v. Callahan,* 979 F.Supp. 952, 955 (W.D.N.Y.1997). The Commissioner's ruling cannot be upheld if it is based on legal error, or it is not supported by substantial evidence. *Riv-*

*era,* 942 F.Supp. at 182; *Grey v. Heckler,* 721 F.2d 41, 44 (2d Cir.1983).

A five step process is used to determine whether the claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical condition or age, education and work experience;

2. An individual who does not have a "severe" impairment will not be found to be disabled;

3. An impairment must meet or equal an impairment listed in appendix 1. If so, the claimant will be found to be disabled regardless of age, education, or work experience;

4. If an individual is capable of performing work he or she has done in the past, a finding of not disabled will be made;

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors will be considered to determine if the claimant can perform other work.

20 C.F.R. § 416.920. The disability requirements for schizophrenia and mental retardation are addressed in Subpart P, Appendix 1, §§ 12.03, 12.05; *see also* 20 C.F.R. § 416.925 (indicating that a listing of impairments are found in Part 404, Subpart P, Appendix 1).

 The ALJ first concluded that plaintiff did not suffer a physical disability. This finding is clearly supported by the record. While plaintiff received physical therapy for his back and medication for his headaches, plaintiff's own medical records do not show that he is physically disabled (*See* R. at 219–235). The reports of the examining physicians further support this finding (*See* R. at 236–44). Neither Dr. Galante nor Dr. Akman found any limitations on employment due to plaintiff's physical condition (R. at 236–39, 243). Accordingly, the ALJ's determination that

plaintiff is not physically disabled is affirmed.

## A. The Validity of Dr. Dickinson's IQ Tests.

The main question in this case relates to the ALJ's rejection of Dr. Dickinson's testing of plaintiff's intellectual capacity. After administering the Wechsler Adult Intelligence Scale, Dr. Dickinson found plaintiff to be severely deficient in all subtests (R. at 253). "[Plaintiff] earned a Verbal IQ of 51, Performance IQ of 54, and Full Scale IQ of 47. These scores would formally place [plaintiff] in the moderately retarded range at the first percentile in comparison with his age peers" (*Id.*). Other tests administered by Dr. Dickinson produced similar results.

If Dr. Dickinson's findings are accepted, then plaintiff has shown that he has a mental impairment which equals or exceeds listing 12.05(B), entitling him to benefits based on mental retardation. In this case, however, the ALJ rejected Dr. Dickinson's testing, finding that the claimant deliberately gave Dr. Dickinson inadequate responses to the standardized tests (R. at 51).

The ALJ concluded that plaintiff's performance during the testing was at odds with his observation of plaintiff's abilities. In support of this conclusion, the ALJ noted that plaintiff was unable to tell Dr. Parker his date of birth, the current date, his telephone number, or his address, yet was able to give responses to these questions during the hearing (R. at 53; *see also* R. at 80–83). In addition, the ALJ was unconvinced by plaintiff's inability to draw a picture when the record indicates that plaintiff completed a questionnaire using cursive handwriting (R. at 53; *see also* R. at 199–201).

 This finding was error. The medical evidence plainly shows that plaintiff is mentally disabled. The level of severity required for mental retardation is "[a] valid verbal, performance, or full scale

IQ score of 59 or less." 20 C.F.R. Subpart P, Appendix 1, § 12.05(B). According to Dr. Dickinson, plaintiff's IQ score was below 59 (R. at 253). Dr. Parker indicated that his examination of plaintiff was not a valid estimate of his true intellectual potential (R. at 256–57). Even so, Dr. Parker was able to conclude that plaintiff was a man of extremely limited abilities who will require continued assistance (R. at 257).

The ALJ's rejection of Dr. Dickinson's test results erroneously substitutes the ALJ's opinion for legally competent medical opinions. Under well established Second Circuit case law, this is improper. *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir.1998); *McBrayer v. Secretary of Health and Human Services*, 712 F.2d 795, 799 (2d Cir.1983).

 Respondent argues that an ALJ is not required to accept a claimant's IQ scores when they are inconsistent with the record (Item 26, at 2). *Mackey v. Shalala*, 47 F.3d 951, 953 (8th Cir.1995); *Popp v. Heckler*, 779 F.2d 1497, 1499–1500 (11th Cir.1986). The parties do not disagree with this legal principle. However, as already noted, the IQ scores are not inconsistent with the record as a whole. Plaintiff has a very limited educational background. *See supra*, at n. 1. According to Dr. Park, plaintiff's "[b]asic intellectual functions were less than average" (R. at 247). He had difficulty reading and writing in Spanish, and he had no concept of basic mathematics (*Id.*). Dr. Dickinson reached similar conclusions (R. at 253). Dr. Parker's assessment, though incomplete, was consistent with the findings of Dr. Dickinson.

## B. Mental Retardation as of Age 22.

The government also argues that plaintiff has failed to meet his burden of proving that he has been mentally retarded since before age twenty-two. Both sides agree that the record does not contain any evidence, one way or the other, of plain-tiff's intellectual functioning prior to age 22.

 I find that legal authority permits circumstantial evidence to establish the "developmental" element of this listed impairment. Mental retardation is defined as a life long condition. *Branham v. Heckler*, 775 F.2d 1271, 1274 (4th Cir. 1985). This condition must manifest itself before age 22. 20 C.F.R. Subpart P, Appendix 1, § 12.05. Absent any evidence of a change in plaintiff's intellectual functioning, it is appropriate to assume that plaintiff's IQ has not changed since his twenty-second birthday. *Luckey v. Department of Health and Human Services*, 890 F.2d 666, 668–69 (4th Cir.1989); *Guzman v. Bowen*, 801 F.2d 273, 275 (7th Cir.1986); *Sird v. Chater*, 105 F.3d 401, 402 n. 4 (8th Cir.1997); *Rivera v. Chater*, No. 94–CV–6597T, slip op. at 5 (W.D.N.Y. Dec. 18, 1995).

The government argues that plaintiff's alcohol abuse could account for a reduction in his IQ over the years. This argument is speculative and not supported by the record. In fact, the ALJ refused to credit the evidence of plaintiff's alcohol abuse in the record.

## C. Nature of Appropriate Remedy.

 When there is substantial proof in the record of entitlement to benefits, and remand for further proceedings would serve no purpose but to delay the proceedings, the decision of the Commissioner should be reversed and the matter remanded for calculation of benefits. *Rivera v. Sullivan*, 923 F.2d 964, 970 (2d Cir. 1991); *Carroll v. Secretary of Health and Human Services*, 705 F.2d 638, 643–44 (2d Cir.1983); *Pfalzgraf v. Shalala*, 997 F.Supp. 360, 367 (W.D.N.Y.1998).

The government argues that the case should not be reversed outright because additional evidence is necessary as to the validity of Dr. Dickinson's tests and the onset of plaintiff's mental retardation. Plaintiff responds that the record of plain-

tiff's "listing" severe mental retardation has been fully developed with the assistance of defendant's own consultative physicians and psychologists, and that there is no basis for further administrative hearing.

■ I agree with plaintiff's position. First, there is no competent evidence in the record questioning the validity of Dr. Dickinson's tests. Secondly, remand for the taking of additional evidence as to the "onset" of plaintiff's mental retardation would serve no useful purpose. The plaintiff was 42 years old at the time of his administrative hearing. The record contains extensive medical evidence. To request a physician to opine as to plaintiff's mental status over 20 years ago would be speculative at best. As set forth above, it is appropriate to find that plaintiff's measured IQ is unchanged over time.

Accordingly, the Commissioner's decision is reversed and the matter is remanded for calculation of benefits.

### III. Taking of Further Evidence is Unwarranted.

■ Defendant moves to remand this matter to the Social Security Administration for further proceedings pursuant to the sixth sentence of 42 U.S.C. § 405(g). Defendant wishes to consider an August 16, 1996, evaluation of plaintiff's mental capacity performed by Dr. Dickinson (Item 22, at 2–3; *see also* Item 19, at Ex. B). Remand is appropriate when there is new material evidence that was unavailable at the time of the earlier proceeding. *Lisa*, 940 F.2d at 43. However, the evidence being offered must be " 'new,' and not merely cumulative of what is already in the record." *Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir.1991) (quoting *Szubak v. Secretary of Health & Human Services*, 745 F.2d 831, 833 (3d Cir.1984).)

■ The evidence respondent seeks to examine clearly is new. This analysis of plaintiff's intellectual abilities, which was the second time Dr. Dickinson examined plaintiff, was completed after the February 11, 1993, hearing. However, this evidence is only cumulative of what already exists in the record. Dr. Dickinson administered the same tests to plaintiff, with the addition of *Test De Vocabulario En Imagenes Peabody* during the 1996 examination. The scores on each test administered fell within similar ranges as those obtained from the first examination.[2] While the 1996 test found plaintiff able to count pennies and mixed change, as well as measure and tell time, he was still unable to identify the colors in either the Puerto Rican or American flags, nor could he say how many months made up a year or name any of the months (Item 19, at Ex. B). After the 1994 evaluation, Dr. Dickinson concluded that plaintiff's "[p]icture would be of borderline retardation by social impression as well as serious anxiety disorder and alcohol dependency" (R. at 254). Dr. Dickinson's conclusion following the 1996 evaluation was that plaintiff functioned in the low-mildly retarded level (Item 19, at Ex. B).

The results of Dr. Dickinson's 1996 evaluation of plaintiff are almost identical to his earlier findings. I find this evidence to be merely cumulative of what already exists in the record and, as already noted, this matter is being remanded to the Commissioner for calculation of benefits. Accordingly, defendant's motion to remand pursuant to sentence six of 42 U.S.C. § 405 is denied.

### CONCLUSION

Plaintiff's motion for judgment on the pleadings (**Item 18**) is granted and the

---

**2.** Plaintiff earned a Verbal IQ of 56, a Performance IQ of 57, and a Full Scale IQ of 52 from Dr. Dickinson's second evaluation (Item 19, at Ex. B). The Raven Progressive Matrices yielded an IQ estimate below 60 (*Id.*).

Plaintiff earned an IQ estimate of 57 on the TONI–II Bender–Gestalt (*Id.*). Dr. Dickinson found him functioning in the low-mildly retarded level. (*Id.*).

matter is remanded for calculation of benefits. Furthermore, defendant's motion for judgment on the pleadings (**Items 12, 15**) and defendant's motion to remand (**Item 21**) is denied.

So Ordered.