Eugenio CRUZ, Plaintiff-Appellant,

v.

Louis W. SULLIVAN, Secretary of Health and Human Services, Defendant-Appellee.

No. 1351, Docket 90–6020.

United States Court of Appeals, Second Circuit.

Argued May 16, 1990.

Decided Aug. 8, 1990.

Carolyn A. Kubitschek, Brooklyn, N.Y., for plaintiff-appellant.

Kathleen A. Zebrowski, Asst. U.S. Atty. (Otto G. Obermaier, U.S. Atty. S.D.N.Y., Edward T. Ferguson, III, Asst. U.S. Atty., Susan D. Baird, Sp. Asst. U.S. Atty., New York City, of counsel), for defendant-appellee.

Before OAKES, Chief Judge, PIERCE and PRATT, Circuit Judges.

PIERCE, Senior Circuit Judge:

Eugenio Cruz appeals from a judgment of the United States District Court for the Southern District of New York, David N. Edelstein, *Judge*, filed October 13, 1989, affirming the decision of Louis W. Sullivan, Secretary of Health and Human Services, that Cruz was not eligible for Supplemental Security Income ("SSI") disability benefits. The district court found that substantial evidence in the record supported the Secretary's denial of benefits. On appeal, Cruz asserts, *inter alia*, that he did not receive a full and fair hearing before the administrative law judge and that the Secretary misapplied the treating physician rule. For the reasons that follow, we vacate the judgment of the district court with instructions to remand the matter to the Secretary for further proceedings in accordance with this opinion.

## I.

Eugenio Cruz was born on September 11, 1947, in Santo Domingo, Dominican Republic, where he completed the seventh grade. He is married and the father of two children. He is literate in Spanish; he can barely speak and read English. Cruz emigrated to the United States in 1968, and was employed as a clothes sorter in a warehouse for thirteen years until November 1982 when the company moved. Cruz lost his job, and thereafter became ill with asthma and also experienced lower back pain.

Between 1980 and 1987, Cruz was examined by at least two treating and three consulting physicians for his asthma and back problems; their medical reports provided inconsistent conclusions about the severity of Cruz's asthma condition. Dr. Fidel Larraondo was Cruz's first treating physician from 1980 to 1984. During this period, Dr. Larraondo treated Cruz for asthmatic bronchitis and restricted him from working with detergents and chemicals or in dusty places. On November 17, 1984, Dr. Larraondo evaluated Cruz's ability to work, and determined that despite chronic asthmatic bronchitis, he could work full-time except around dust, odors or skin irritants and in places subject to humidity or sudden temperature changes.

A consulting physician retained by the New York State Human Resources Administration, one Dr. Hong, examined Cruz on August 14, 1986, and concluded that he was unable to work for three months because of his bronchial asthma, hypertension, lower back pain and other ailments. On December 15, 1986, Cruz filed an application *pro se* for SSI disability benefits, asserting that he had become disabled in 1982 because of asthma.

At the request of the Social Security Administration, Cruz underwent a physical examination on February 13, 1987. A consulting physician, Dr. Antonio De Leon, performed, *inter alia*, a pulmonary function test and concluded that the results were "compatible with mild restrictive and moderately severe obstructive lung disease, with good improvement after bronchodilators." His diagnosis was bronchial asthma and back pains. His report stated that Cruz wheezed noticeably, suffered asthmatic attacks about three times a year and denied being hospitalized or visiting the emergency room.

On April 29, 1987, Dr. Mahmood Gheissary, a physician who apparently began treating Cruz in 1986, wrote the following note, which stated in its entirety: "To whom it may concern[:] This is to certify that Mr. Eugenio Cruz is suffering from chronic [a]sthma attack and currently is under my medical treatment, because of his underlying illness, he is unable to work." He did not, however, submit any clinical findings or laboratory test results.

Five months later, on September 29, 1987, Dr. Howard Finger examined Cruz on a consultative basis. This examination revealed that Cruz was not wheezing; respiratory excursions were fair; breath sounds were mildly diminished over both lung fields; and his lungs were clear to percussion. The findings of the pulmonary function test suggested "the presence of a possible mild restrictive component. No evidence of obstructive airway disease." Dr. Finger's impressions were a history of bronchial asthma, with only mild symptoms at present, and probable chronic low back syndrome.

After his application for benefits was denied initially and on reconsideration, Cruz requested a hearing by an administrative law judge ("ALJ"). The ALJ held a hearing on February 18, 1988. At the hearing, Cruz, still appearing *pro se* and testifying through an interpreter, answered questions about his personal and educational background and work experience. The ALJ inquired into his medical problems and treatment, physical abilities and daily activities.

Cruz testified that he had suffered asthma attacks for the past four years, that he took various prescribed medications and that he used an inhaler to control his asthma. The ALJ told Cruz he could hear him wheezing very badly, and Cruz responded that he wheezed all the time. The ALJ asked Cruz if he ever went to the emergency room, and Cruz answered that he had. Cruz stated that when he had asthma attacks, he went to see his current doctor, Dr. Gheissary, once or twice a week for injections. Cruz testified that he could walk only about a block and a half before his breathing problems were aggravated, and that he was not sleeping well. Moreover, he could not use public transportation, do any housework or leave the house during inclement weather. Cruz stated that he occasionally watched television or visited with friends.

Four days after the hearing, on February 22, 1988, the ALJ sent a letter to Dr. Gheissary requesting copies of his office treatment notes and a statement of his findings and opinions explaining why Cruz was unable to work. In this letter the ALJ stated that he expected a response by March 4, 1988. When the ALJ received no reply from Dr. Gheissary, he apparently assumed that the doctor had received the letter but had "failed to respond."

In his decision, dated June 14, 1988, the ALJ found that the medical evidence did establish that Cruz had asthma and low back syndrome. He also found that Cruz could not lift more than 50 pounds or be exposed to detergents, chemicals and excessive dust, and therefore, could not perform his former work as a clothing sorter. The ALJ determined, however, that Cruz's impairment was not presumptively disabling, and thus, he assessed Cruz's ability to perform other work by examining certain vocational factors set out in the Social Security Act ("the Act"). The ALJ then applied his findings to a chart of the Medical–Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 203.00 (1989), and concluded that Cruz was not disabled within the meaning of the Act. Specifically, the ALJ decided that Cruz could perform "medium work," which "involve[d] lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds," *id.* § 416.967(c), as long as he was not exposed to detergents, chemicals or dust. The ALJ also concluded that Cruz's testimony was "exaggerated and not fully credible as inconsistent with the medical evidence." Cruz appealed to the Social Security Appeals Council, which denied his request for review. The ALJ's decision then became the final decision of the Secretary.

Cruz sought review of the Secretary's determination by commencing an action in the district court on December 27, 1988. Judge Edelstein referred the case to Magistrate Buchwald. The Secretary moved for judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(c). Cruz did not submit any papers in opposition to the motion, but Dr. Gheissary submitted a letter, dated May 19, 1989, apparently addressed to the district court, which stated that Cruz had chronic bronchial asthma, suffered acute attacks every two weeks, was presently

unable to work and should be under close medical attention.

On June 30, 1989, Magistrate Buchwald issued a report, recommending that the Secretary's decision be affirmed. She determined that Dr. Gheissary's diagnosis—that Cruz was unable to work because he was suffering from chronic asthma attacks—was not supported by clinical findings or laboratory tests and was contradicted by the reports of two consulting physicians, Drs. De Leon and Finger. She also found dispositive various reports indicating that Cruz's back pain was not severe enough to render him unemployable for more than three weeks. Therefore, the Magistrate decided that substantial evidence in the record existed to support the ALJ's findings that Cruz could perform medium work with environmental restrictions, and that Cruz had received a full and fair hearing. Judge Edelstein issued an order adopting the Magistrate's Report and Recommendation and granted the Secretary's motion for judgment on the pleadings. This appeal followed.

## II.

■ An appellate court's review of the Secretary's final decision denying a SSI disability benefits claim is not *de novo*, *Wagner v. Secretary of Health & Human Serv.*, 906 F.2d 856, 859–60 (2d Cir.1990); it is limited to inquiring into whether the Secretary's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard. *See* 42 U.S.C. § 405(g) (1982); *Aubeuf v. Schweiker*, 649 F.2d 107, 112 (2d Cir.1981). Substantial evidence is defined as " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938)). To determine whether substantial evidence exists, we conduct our own plenary review of the administrative record; and, in reviewing appeals from the district court, our

focus is more on the administrative ruling than on the district court's decision. *Vargas v. Sullivan*, 898 F.2d 293, 296 (2d Cir. 1990).

■ In deciding whether the Secretary's conclusions are supported by substantial evidence, we must first be satisfied that "the claimant has had 'a full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the Act.' " *Echevarria v. Secretary of Health & Human Serv.*, 685 F.2d 751, 755 (2d Cir.1982) (quoting *Gold v. Secretary of Health, Educ. & Welfare*, 463 F.2d 38, 43 (2d Cir.1972)). The Act must be liberally applied, for it is a remedial statute intended to include not exclude. *Bluvband v. Heckler*, 730 F.2d 886, 892 (2d Cir.1984). Thus, when the claimant appears *pro se*, suffers ill health and is unable to speak English well, as in this case, we have "a duty to make a 'searching investigation' of the record" to make certain that the claimant's rights have been adequately protected. *Gold*, 463 F.2d at 43 (quoting *Miracle v. Celebrezze*, 351 F.2d 361, 383 (6th Cir. 1965)).

### A. *The ALJ's Duties*

The ALJ has a duty to adequately protect a *pro se* claimant's rights "by ensuring that all of the relevant facts [are] sufficiently developed and considered." *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir.1980). While the administrative hearing is not designed to be adversarial, *Donato v. Secretary of the Dep't of Health & Human Serv.*, 721 F.2d 414, 418 (2d Cir. 1983), when the claimant is unrepresented, the ALJ is under a heightened duty " 'to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts,' " *Echevarria*, 685 F.2d at 755 (quoting *Hankerson*, 636 F.2d at 895).

■ The scant record herein, which consists of a thirteen-page transcript, reveals a host of lost opportunities to explore the facts. For example, when the ALJ asked Cruz when his asthma began, Cruz answered, "Four years that I've had the attacks, constantly." The ALJ failed to probe into the frequency and severity of his attacks.

Later, the ALJ asked Cruz if he ever went to the emergency room because of his asthma, and Cruz answered that he had. The ALJ did not explore what circumstances had triggered Cruz's attacks, how often he had been treated or when he had last visited the emergency room. Instead, the ALJ only asked at which hospital Cruz had been treated, and yet did not seek to obtain those hospital records. Further, the ALJ never inquired as to whether the nature of Cruz's asthma had changed over the years. Although we do not at all suggest that the ALJ was indifferent to Cruz's condition, it is our view that he did not adequately fulfill his "affirmative obligation to assist this *pro se* claimant in developing [his] case." *Eiden v. Secretary of Health, Educ. & Welfare*, 616 F.2d 63, 65 (2d Cir. 1980).

### B. *The ALJ's Request for Additional Information*

■ We have repeatedly stated that when the ALJ rejects the findings of a treating physician because they were conclusory or not supported by specific clinical findings, he should direct a *pro se* claimant to obtain a more detailed statement from the treating physician. *Bluvband*, 730 F.2d at 895; *see also Echevarria*, 685 F.2d at 756 ("proper course would have been to direct [the unrepresented claimant] to obtain a more detailed statement from the treating physician[ ]"); *Hankerson*, 636 F.2d at 896 ("basic principles of fairness require that [the ALJ] inform the [*pro se* ] claimant of his proposed action and give him an opportunity to obtain a more detailed statement"). In the instant case, the ALJ determined that the opinions and reports of Cruz's other treating and consulting physicians contradicted Dr. Gheissary's opinion. Although the ALJ sent a letter to Dr. Gheissary four days after the hearing, requesting a more detailed explanation of the causes of Cruz's inability to work, he clearly failed to advise Cruz, a *pro se* claimant, that he should obtain a more detailed statement from Dr. Gheissary. Had Cruz been apprised of the ALJ's skepticism, he, unlike the ALJ, may have been persistent about obtaining his medical records and a detailed statement from Dr. Gheissary.

■ The Secretary argues that the ALJ's written request for additional information did comply with the requirements of the treating physician rule as set forth in a Social Security Ruling approved by this Circuit in *Schisler v. Bowen*, 851 F.2d 43, 46–47 (2d Cir.1988). While the requirement to obtain treating source evidence is couched in terms of "every reasonable effort," the Ruling also states: "If necessary to resolve the inconsistency [between the opinions of the treating source and other sources], the adjudicator *will* secure additional evidence and interpretation or explanation from the treating source(s) and/or consulting source(s)." *Id.* at 47 (emphasis added). We believe that, based on the record in this case, this language requires something more than simply sending a letter as occurred herein.

### C. *Substantial Evidence*

The Secretary's primary argument on appeal is that there is substantial evidence in the record to support the denial of disability benefits, to wit, the reports of one of Cruz's treating physicians and two consulting physicians. It is well-established in this Circuit that the opinion of a treating physician on the subject of medical disability is "(1) binding on the fact-finder unless contradicted by substantial evidence and (2) entitled to some extra weight, even if contradicted by substantial evidence, because the treating source is inherently more familiar with a claimant's medical condition than are other sources." *Id.; see Hidalgo v. Bowen*, 822 F.2d 294, 296–97 (2d Cir. 1987). The treating physician's medical opinion need not be supported by objective clinical or laboratory findings. *See Bluvband*, 730 F.2d at 893; *Eiden*, 616 F.2d at 65. However, "if a treating physician's opinion is not supported by such findings, the ALJ may not be required to accept it 'uncritically and without evaluation,' particularly where the record contains substantial contrary evidence." *Hankerson*, 636 F.2d at 896 n. 3 (quoting *Reyes*

*v. Harris,* 482 F.Supp. 638, 641 (S.D.N.Y. 1979)).

■ In contrast, in evaluating a claimant's disability, a consulting physician's opinions or report should be given limited weight. *Cf. Bluvband,* 730 F.2d at 894 (ALJ should not baldly accept consulting physicians' evaluations which are disputed and formulated after they had examined claimant only once). This is justified because "consultative exams are often brief, are generally performed without benefit or review of claimant's medical history and, at best, only give a glimpse of the claimant on a single day. Often, consultative reports ignore or give only passing consideration to subjective symptoms without stated reasons." *Torres v. Bowen,* 700 F.Supp. 1306, 1312 (S.D.N.Y.1988). We recognize that the "[r]esolution of genuine conflicts between the opinion of the treating source, with its extra weight, and any substantial evidence to the contrary remains the responsibility of the fact-finder." *Schisler,* 851 F.2d at 47. Because we conclude that the record on review is so meager, we decline to reach the issue of whether the treating physician's opinion herein as to disability was contradicted by substantial evidence. *Cf. Gilliland v. Heckler,* 786 F.2d 178, 184 (3d Cir.1986) (decision to reverse and direct award of benefits rather than to vacate judgment and remand "should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the Claimant is disabled and entitled to benefits"); *Hankerson,* 636 F.2d at 897 (court has on numerous occasions remanded matter to Secretary to further develop record when gaps in the administrative record existed); *Gold,* 463 F.2d at 44 (remand to the Secretary for taking more evidence is prudent where "serious uncertainties or gaps in the record" exist).

### III.

It is our conclusion that Cruz, appearing in the administrative proceeding herein as a *pro se* claimant, did not have an adequate hearing. Since counsel now represents Cruz, it is likely that the unexplored information discussed above will be pursued. The judgment of the district court is vacated, and this matter is remanded with instructions to remand to the Secretary for further proceedings consistent with this opinion.

Appellant's request for costs and attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d) (1988), is denied without prejudice to renewal because he presently is not a "prevailing party." *See McGill v. Secretary of Health & Human Serv.,* 712 F.2d 28, 31–32 (2d Cir. 1983), *cert. denied,* 465 U.S. 1068, 104 S.Ct. 1420, 79 L.Ed.2d 745 (1984).

Vacated and remanded with instructions.