**Brenda MORGAN, on behalf of Joshua MORGAN, Plaintiff,**

v.

**Shirley S. CHATER, Commissioner of Social Security, Defendant.**

No. 94–CV–6560L.

United States District Court, W.D. New York.

Feb. 2, 1996.

C. Benjie Louis, Chemung County Neighborhood Legal Services, Inc., Elmira, NY, for plaintiff.

Brian M. McCarthy, Asst. U.S. Atty., Rochester, NY, for defendant.

### DECISION AND ORDER

LARIMER, Chief Judge.

Plaintiff Brenda Morgan, on behalf of her minor son Joshua Morgan, commenced this action pursuant to 42 U.S.C. §§ 405 and 1383(c)(3), to review the final determination of the Commissioner of Health & Human Services ("the Commissioner")[1] denying her application for disabled child Supplement Security Income ("SSI") disability benefits. Pending before me are the parties' cross-motions for judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(c). For the reasons set forth below, the Commissioner's motion is denied and plaintiff's motion is granted. This matter is remanded to the Commissioner for further proceedings consistent with this decision.

### BACKGROUND

Plaintiff applied for SSI disability benefits on behalf of her son ("Joshua") on July 14, 1993. The basis for the application was that Joshua has attention deficit disorder and "behavioral" impairments. The application was denied initially and on reconsideration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which hearing occurred on April 7, 1994. In a determination dated May 11, 1994, the ALJ found that Joshua is not disabled. This determination became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on September 14, 1994. This action to review the Commissioner's determination followed.

### DISCUSSION

#### A. The Standard of Review

 A court may reverse the factual findings of the Commissioner only if those findings are not supported by substantial evidence in the record. 42 U.S.C. §§ 405(g) and 1383(c)(3). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Thus, the determination of the Commissioner is conclusive as long as it is supported by substantial evidence and is not based on legal error. *Arnone v. Bowen,* 882 F.2d 34, 37 (2d Cir.1989) (citations omitted).

#### B. The Standard for Finding a Disability

A person is considered to be disabled under the Social Security Act if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less that twelve months ..." 42 U.S.C. § 1382c(a)(3)(A). In the case of a child under the age of 18, disability exists if the child suffers from any medically determinable physical or mental impairment of "comparable severity" to that of a disabled adult. *Id.*

"Comparable severity" (for a child) means that the impairment so limits the child's ability to function independently, appropriately, and effectively in an age-appropriate manner that the impairment and the limitations resulting from it are comparable to those which would disable an adult. 20 C.F.R. § 416.924(a). For a child between 3 and 16 years of age, this is measured primarily by whether the impairment substantially reduces the child's ability "[g]row, develop, or mature physically, mentally, or emotionally and, thus, to engage in age-appropriate activities of daily living ... in self-care, play and recreation, school and academics, community

---

**1.** By Public Law No. 103–296, 108 Stat. 1472 (codified at 42 U.S.C. § 901, note), known as the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995. Accordingly, the "Commissioner" has been substituted for the "Secretary" throughout this decision. *See* Transition Rules at 42 U.S.C. § 901, note.

activities, vocational settings, peer relationships, or family life...." 20 C.F.R. § 416.924(a)(2); *see also* 20 C.F.R. § 416.924b(b)(3).

The Commissioner must follow a four-step evaluation process to determine whether a child has an impairment of "comparable severity" such that he or she is entitled to SSI disability benefits. *See* 20 C.F.R. § 416.924(b). First, it must be determined whether the child is engaging in "substantial gainful activity." *Id.* at subpart (c). If so, there can be no finding of disability. If not, then it must be determined whether or not the child has a severe impairment, or combination of impairments. *Id.* at subpart (d). If not, there is no disability. If so, however, then it must be determined whether or not the impairment(s) meets or equals certain impairments set forth in the Listing of Impairments, 20 C.F.R. § 404, subpart P, Appendix 1. *Id.* at subpart (e). If so, then the child is disabled. If not, then the evaluation proceeds to its fourth and final step—an "individualized functional assessment" ("IFA"). *Id.* at subpart (f).

The IFA, through separate analysis of six distinct categories of child development, measures "the impact of [the child's] impairment(s) on [his] overall ability to function independently, appropriately, and effectively in an age-appropriate manner." *Id.* The results of this analysis will determine whether the child has an impairment of comparable severity to an impairment that would disable an adult. *Id.*

In this case, the ALJ determined that Joshua was not engaged in substantial activity. Although not explicitly stated, the ALJ apparently determined that Joshua was "severely impaired" because he proceeded directly to an assessment of whether Joshua's impairment met or equaled the impairments listed at Appendix 1 of 20 CFR § 404, subpart P. The ALJ determined that it did not. Thus, he proceeded to perform the fourth step of the process: the IFA. Through his IFA analysis, the ALJ determined that Joshua did not suffer an impairment of comparable severity to that of a disabled adult, and he denied plaintiff's application.

## C. *The Parties' Arguments and My Findings*

The Commissioner asserts that the ALJ's findings are supported by substantial evidence and must be upheld. Plaintiff does not dispute the ALJ's determination but asserts that new and material evidence now exists to support plaintiff's application and that this matter should be remanded for further consideration.

I find that new and material evidence exists that should be considered by the ALJ. Additionally, although plaintiff only seeks a remand because of the new evidence, I find *sua sponte* that the ALJ failed to provide any explanation whatsoever for his rejection of considerable relevant evidence that appears to support a finding of an impairment justifying the payment of benefits. Accordingly, I reverse the Commissioner's determination and remand this matter for further proceedings consistent with this decision.

## D. *New and Material Evidence*

Plaintiff asserts that new, material evidence exists which should be considered by the ALJ. Specifically, plaintiff presents two reports prepared by psychiatrists at the Elmira Psychiatric Center on September 6, 1994 and on September 14, 1994. Joshua was admitted to the Elmira Psychiatric Center on September 2, 1994, following a series of fire-starting incidents and oppositional behavior at home. He remained there until January 1995.

The first report is the "Screening/Admission Note and Psychiatric Evaluation" done soon after Joshua's admission to the facility. That report contains a history of Joshua's present illness, which notes a pattern of fire-setting behaviors throughout the prior year. The report notes that Joshua sets fires when he is angry at people. It also notes a history of violent behavior toward animals, "*i.e.,* has killed a cat by strangulation with string" and violent behavior toward family members. It is noted that Joshua threatens suicide when his demands are not met. The report concludes with a finding of "[e]xtensive firesetting behavior; history of violent behavior towards family and animals; attention-deficit

disorder with hyperactivity." Ex. A to Plaintiff's Memorandum of Law.

The second report, a Psychological Evaluation performed several days later, contains similar information about Joshua's behavior throughout the preceding year and beyond. This report finds a "long history of attention deficit ... history of dangerous fire setting behavior as well as ... oppositional tendencies...." Ex. B to Plaintiff's Memorandum of Law.

■ The Social Security Act provides that a court may remand a case to the Commissioner to consider additional evidence, "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). The Second Circuit has further refined this standard with the following guidelines. The applicant must show that the proffered evidence is: (1) "new" and not merely cumulative of what is already in the record; (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative; and (3) he must demonstrate good cause for the failure to present the evidence earlier. *See Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir.1991) (citations omitted).

■ I find that the proffered additional evidence meets all these criteria. The two psychiatric reports provide evidence of additional maladaptive behaviors that were not reported earlier; many of the reported behaviors had occurred throughout the prior year or so; and there was good cause for not presenting the evidence earlier—the reports were not created until September 6th and 14th, respectively, within days of (and, in the case of the latter report, the same day as) the Appeals Council's final denial. Accordingly, I find that good cause has been shown why these reports were not submitted earlier. The ALJ is directed to consider these additional reports when re-evaluating Joshua's claim on remand.[2]

### E. The ALJ's Determination is Not Adequately Explained

I remand this matter for an additional reason. My independent review of the record suggests to me that the ALJ failed to adequately apply the facts in the record to the regulations concerning childhood disabilities. Specifically, the ALJ failed to adequately explain the basis for his determination that Joshua's impairment does not meet or equal the impairments listed in App. 1 of 20 C.F.R. § 404, subpart P. Because I find substantial evidence in the record suggesting that Joshua's impairments do meet or equal at least one of listed impairments, and because the ALJ has ignored this evidence without explanation, his determination cannot stand. The matter must be remanded for this reason as well.

■ A court "cannot ... conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered." *Ryan v. Heckler*, 762 F.2d 939, 941 (11th Cir.1985). It is clear that a determination by the ALJ must contain "a sufficient explanation of his reasoning to permit the reviewing court to judge the adequacy of his conclusions." *Rivera v. Sullivan*, 771 F.Supp. 1339, 1354 (S.D.N.Y.1991). "Although the ALJ is not required to 'reconcile explicitly every conflicting shred of medical testimony' ... he cannot 'pick and choose' evidence in the record that supports his conclusions." *Id.* (citations omitted).

■ With respect to Joshua's impairment, the ALJ found as follows:

Part B of the Listing of Impairments contained in Appendix 1, Subpart P, Regula-

---

**2.** Plaintiff proffers three additional documents as new evidence. One is a letter dated May 24, 1995, from a psychiatrist at the Elmira Psychiatric Center who treated Joshua and his family from March 31, 1995 to April 28, 1995. The second is a School Psychological Report dated March 3, 1995. The third is the Elmira Psychiatric Center Discharge Summary prepared on February 12, 1995. Although these documents provide additional information about Joshua's ongoing condition, I find them to focus primarily on current test performance and symptoms. Nevertheless, the ALJ should consider all of these documents and determine, in the first instance, their relevance to Joshua's condition.

tions No. 4 addresses the evaluation of impairments for children ... The findings in this case fail to meet or equal in severity the requirements of the Listings.

This is all the ALJ stated with regard to the failure to meet or equal the Listing requirements. There is no discussion as to why he made this determination, what evidence he relied upon, and what evidence he rejected in making such a finding. This one-sentence denial is insufficient to support the determination, especially in light of the considerable evidence to the contrary. "[A]n ALJ's failure to acknowledge relevant evidence or explain its implicit rejection is plain error." *Id.* at 1354 (citations omitted).

### i. *Attention Deficit Hyperactivity Disorder*

Although the ALJ failed to set forth the basis for his decision, the Commissioner, in her brief, now attempts to justify the result. The Commissioner asserts that Joshua's impairment does not meet or equal the criteria for Attention Deficit Hyperactivity Disorder set forth in § 112.11 of Part B of the Listing of Impairments (20 C.F.R. § 404, Subpart P, App. 1). The criteria for Attention Deficit Hyperactivity Disorder ("ADHD") are as follows:

Manifested by developmentally inappropriate degrees of inattention, impulsiveness, and hyperactivity.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied.

A. Medically documented findings of all three of the following:

1. Marked inattention; and

2. Marked impulsiveness; and

3. Marked hyperactivity;

AND

... for children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraph B2 of 112.02.

Paragraph B 2 of § 112.02 contains the following criteria:

a. Marked impairment in age-appropriate cognitive/communicative function....; or

b. Marked impairment in age-appropriate social function, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child ...) and including, if necessary, the results of appropriate standardized tests; or

c. Marked impairment in personal/behavioral function, as evidenced by: (1) Marked restriction of age-appropriate activities of daily living....; or (2) Persistent serious maladaptive behaviors destructive to self, others, animals, or property ...; or

d. Deficiencies of concentration, persistence, or pace....

Thus, the preliminary step in analyzing the evidence is to determine whether or not it supports a finding of marked inattention, impulsiveness and hyperactivity. The Commissioner cites the May 1993 report of school psychologist Suzanne Basal, in which Joshua is reported to have significant problems in the impulsivity area, but only "borderline" scores in the inattentiveness and hyperactivity areas. Thus, asserts the Commissioner, no ADHD exists.

However, the Commissioner fails to acknowledge, as did the ALJ, other parts of the report that are highly suggestive of ADHD. For instance, the report states that Joshua's "[a]ttention span tends to be short and distractable * * * He shows a tendency to excessive body movement with legs constantly swinging and after sitting only several seconds uses many postural adjustments continually." Tr. 67.

The report states that Joshua:

seeks constant attention and assistance from the adult in every item presented whether he needs it or not. He tries to verbally and physically control by changing the situation so that he can successfully complete it. He tests the limits in every situation presented. He needs explicit statements of expectations and rules and regulations and consistent, objective enforcement of them. He is a difficult child to handle even on a one-to-one basis. * * * He tends to be off task very frequently in a large classroom setting and he will often wander from one interest center to the next without completing the task

unless adult intervention is present. He tends to bully his peers by imposing his will in a play situation or by domineering the situation that the other student has previously established. * * * *Id.*

As explained in the report, Joshua was given a test known as the Devereux Elementary School Behavior Rating Scale. On this test of child behavior, "[e]ight of the sixteen behavior factor areas were found to be significantly outside the norm ... [including] social/emotional issues ... such as tendencies to negative/aggressive behaviors and difficulty in establishing positive peer relationships." Tr. 69. The report lists a number of problem areas: "Joshua has difficulty in working cooperatively in groups and does not like to take responsibility for the consequences for his behavior" (*Id.*); he "has a tendency to blame others for his problems and feels that they are picking upon him" (*Id.*); he "does not like to think before he acts" (*Id.*); he "relies heavily upon adult assistance and intervention and demands attention in inappropriate ways" (Tr. 70); he "has excessive body movement and tends to become over excited by tasks activities" (*Id.*); and, finally, "attentional problems, physical and emotional over excitability, and social emotional adjustment difficulties are coming to levels that may negatively interfere with learning in a whole day program that is as demanding as a first grade curriculum" (*Id.*). This evidence is highly supportive of an ADHD finding, but none of it was discussed by either the Commissioner, or, of course, the ALJ.

The Commissioner then cites a report of Dr. Jon Homuth, Joshua's pediatrician. The Commissioner suggests that because the findings in Dr. Homuth's report are not well explained by him, such findings do not support a determination of impairment. While the Doctor's report could have been more helpful, the Commissioner's conclusion is hardly persuasive. The fact is that whether well described or not, Dr. Homuth's report states explicitly that Joshua's symptoms include "hyperactive" and "short attention" (Tr. 100) and that he suffers from "behavior problem" (Tr. 103) and "hyperkinesis" (Tr. 104).

Other evidence was ignored by the Commissioner altogether. For instance, a teacher's report from one Mrs. Strayer states that Joshua was "in constant motion" and that "his attention was *very* short." Tr. 91. This report further notes that Joshua "became aggressive when thwarted in play," that he "needed to control both children and adults," that he "used his strength to intimidate smaller children," and that "he shows no fear when attempting to do gross motor activities ... and has no fear of consequences of his actions." Tr. 90–91.

Similarly, a recent letter from teacher LeAnne Becker states that "it requires a great deal of energy and self-control for [Joshua] to stay focused and on task. * * * Unstructured or high activity level events sometime prove to be difficult for Joshua to control his behavior, i.e. Gym class, recess. Josh tends to act before he thinks in these situations and more easily loses control." Tr. 113. Joshua's parent's testimony is also relevant.

The reports of school psychologist Suzanne Basal and of pediatrician Jon Homuth arguably provide "medically documented" findings of marked inattention, impulsiveness and hyperactivity. (§ 112.11 of Part B, 20 C.F.R. § 404, subpart P, App. 1). These reports, combined with the reports from Joshua's teachers and parents, arguably show marked impairment in Joshua's social function and his personal/behavioral function, and deficiencies of concentration, persistence, and pace. *Id.* Neither the ALJ nor the Commissioner explains why this evidence was ignored.

### ii. *Personality Disorders*

I find that this same evidence could also support a finding that Joshua's impairment meets or equals the impairments set forth in a separate Mental Health category not even raised by the Commissioner—"Personality Disorders." *See* 20 C.F.R. 404, Subpart P, App. 1 at Part B, § 112.08.

The criteria for a child's Personality Disorders are as follows:

Manifested by pervasive, inflexible, and maladaptive personality traits, which are typical of the child's long-term functioning

and not limited to discrete episodes of illness.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied.

A. Deeply ingrained, maladaptive patterns of behavior, associated with one of the following:

1. Seclusiveness or autistic thinking; or

2. Pathologically inappropriate suspiciousness or hostility; or

3. Oddities of thought, perception, speech, and behavior; or

4. Persistent disturbances of mood or affect; or

5. Pathological dependence, passivity, or aggressiveness; or

6. Intense and unstable interpersonal relationships and impulsive and exploitative behavior; or

7. Pathological perfectionism and inflexibility;

AND

... for children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraph B 2 of 112.02 (see, supra, at discussion of ADHD).

While the Commissioner does not address this category of mental impairment nor apply the evidence to the criteria set forth above, I find that Joshua's impairment may meet or equal the criteria for this Personality Disorder as well.

For all these reasons, the ALJ's determination is reversed and the matter remanded for further consideration consistent with this decision.[3]

## CONCLUSION

For all the above reasons, I hereby DENY the Commissioner's motion for judgment on the pleadings (# 7) and GRANT the plaintiff's cross-motion for judgment on the pleadings (# 8). The Commissioner's determination is reversed and this matter is remanded to the ALJ for further proceedings consistent with this decision.

IT IS SO ORDERED.

---

3. In his discussion of the IFA, the ALJ cites some evidence suggesting that Joshua's behavior showed improvement after he began taking Ritalin. The long term effectiveness of this drug therapy, and whether any improvement is so great as to meaningfully eliminate his behavior problems must be carefully considered, especially in light of the additional evidence strongly indicating that behavioral problems continued despite the Ritalin regimen.