**Edna RIVERA, Plaintiff,**

v.

**Shirley S. CHATER, Commissioner of Social Security, Defendant.**

**No. 94 Civ. 8283 (DAB).**

United States District Court,
S.D. New York.

Sept. 30, 1996.

**180**

Lansner & Kubitschek, New York City (Carolyn A. Kubitschek of counsel), for Plaintiff.

Mary Jo White, United States Attorney for the Southern District of New York, New York City (Lorraine S. Novinski, Assistant United States Attorney, of counsel), for Defendant.

*MEMORANDUM AND ORDER*

BATTS, District Judge.

Edna Rivera ("Rivera") brings this action pursuant to 42 U.S.C. § 1383(c) for judicial review of a final decision of the Commissioner of Health and Human Services ("Commissioner")[1] denying her application[2] for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 401, *et seq.* Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, this case is remanded for further proceedings.

## I. BACKGROUND

### A. Prior Proceedings

Rivera initially filed an application for SSI on July 7, 1993. (Tr. at 30–33.)[3] Rivera's claim was denied on September 15, 1993. (Tr. at 35–38.) At Rivera's request, the Commissioner reconsidered Rivera's application but once again denied any benefits. (Tr. at 39, 41–44.) Rivera then requested a hearing before an administrative law judge ("ALJ"). (Tr. at 45.) A hearing was held before ALJ Mark J. Hecht on May 10, 1994. (Tr. at 14, 19–29.) In a decision dated May 19, 1994, the ALJ found Rivera not to be disabled within the meaning of the Social Security Act, and therefore not entitled to benefits.[4] (Tr. at 9–10.) Rivera then re-

---

1. Effective March 31, 1995, the function of the Secretary of Health and Human Services was transferred to the Commissioner of Social Security. *See Morgan v. Chater,* 913 F.Supp. 184, 186 n. 1 (W.D.N.Y.1996). Accordingly, reference, in quotations to other cases, to "Secretary" is in effect to the Commissioner.

2. Subsequently, on December 6, 1994, Plaintiff reapplied for SSI benefits, and in a decision by ALJ Hecht, dated September 5, 1996, was found to be disabled since December 6, 1994. Accordingly, this Memorandum & Order covers the period July 7, 1993 through December 5, 1994.

3. "Tr." refers to pages of the Administrative Record filed with the Court.

4. Reference to the determination and findings that are at issue are referred to, interchangeably as those of the ALJ and those of the Commissioner.

quested that the Appeals Council review the hearing decision, (Tr. at 7–8); however, this request was denied. (Tr. at 4–5). The Commissioner's decision became final, and Rivera began this action seeking a reversal of the Commissioner's decision, or in the alternative, a remand for a new hearing.

B.  Factual Background

Rivera was born on November 21, 1944, in Puerto Rico and came to the continental United States when she was six years old. (Tr. at 21.)  She is 5' 2" and weighs 180 pounds.  Following four years of high school,[5] Rivera worked as a department stock clerk at Biltman's for eight years. (Tr. at 21–22.)  Her employment at Biltman's was terminated when they went out of business. (Tr. at 23.)  Abraham and Strauss subsequently employed Rivera as a stock clerk for two years; she left their employ following the birth of her second child. (Tr. at 22–23.) The positions at Biltman's and Abraham and Strauss required some lifting. (Tr. at 22.) In 1989, Rivera worked for three weeks in a factory working with zippers before the factory closed. (Tr. at 23.)  At the time of the hearing, Rivera had not worked since 1989 and was receiving public assistance. (Tr. at 22–23.)

Rivera has suffered from asthma since she was 15 years old; during her second pregnancy she discovered she has hypertension. (Tr. at 24–25.)  She testified at the hearing that she was taking oral medication in an effort to control both conditions, including steroids to control the asthma. (Tr. at 24–25.)

Rivera bases her application for SSI benefits on the claim that her asthma and hypertension prevent her from working. (Tr. at 30.)  During the period from May 1992 to September of 1993, doctors at St. Vincent's Hospital treated Rivera on multiple occasions for problems relating to her asthma and hypertension. (Tr. at 63–74.)

Dr. Papapietro is Rivera's treating physician.  He began treating Rivera in March 1992. (Kubitschek Decl.Ex. A.)  A medical assessment of Rivera's employability, completed by Dr. Papapietro on June 29, 1993, stated that Rivera did not suffer from any medical conditions that would prevent her from bending, carrying light or heavy objects, climbing a ladder, lifting heavy or light objects, or pulling/pushing heavy or light objects.  Dr. Papapietro failed to complete the section of the assessment regarding the employability of Rivera, her ability to stand for any length of time, and her ability to walk around. (Tr. at 75.)

Dr. E.B. Balinberg examined Rivera on August 20, 1993, for the Social Security Administration ("SSA").  He concluded that Rivera had a "limited ability to walk fast, to walk long distances, to climb many stairs and to perform heavy isometric activities like to lift, to carry, to push and to pull heavy loads." (Tr. at 13, 77–86.)

On May 10, 1994, the SSA held a hearing at Rivera's request to review the denial of her SSI benefits. (Tr. at 19.)  Rivera appeared at the hearing *pro se*.  ALJ Hecht told her that she was not required to have formal representation and asked her if she intended to proceed alone.  Rivera stated she would proceed alone. (Tr. at 19.)

During the course of the hearing, the ALJ asked Rivera the number of times she was hospitalized and visited the emergency room.  Rivera responded that she had last been hospitalized in 1993, and visited the emergency room twice between January and May of 1994.  She also testified that she took steroids when she was admitted to the hospital. (Tr. at 24.)  Portions of the record regarding the Plaintiff's emergency room visits were inaudible and not captured in the hearing transcript.  The ALJ asked Rivera whether she felt that her condition was worsening, and she replied in the affirmative. (Tr. at 27.)  In response to a question about whether the weather exacerbated the condition, Rivera stated that cold or damp weather worsened the condition. (Tr. at 26.)

During the hearing, Rivera testified that she had no trouble sitting but could only stand for about a half hour before having to sit. (Tr. at 26.)  Rivera also stated that she could walk three blocks before having to stop

---

**5.**  The record does not state whether Rivera graduated from high school.

to catch her breath and could walk up the nine steps to her apartment without becoming short of breath. She further testified that she required her son to carry groceries from the store and help with laundry because of her limited ability to lift and carry. In addition, she explained that her son helped in cleaning the apartment because the dust "killed" Rivera. (Tr. at 27.) Rivera stated that she felt she could not work because she would be absent frequently. (Tr. at 21–29.)

The ALJ denied Rivera's application for benefits finding that her "impairments did not prevent [her] from performing her past relevant work." (Tr. at 11–14.) Plaintiff requested an appeal and submitted additional evidence that included a revised assessment from Dr. Papapietro and additional medical records from St. Vincent's Hospital. The appeal was denied. (Tr. at 4–6.)

A revised assessment of employability, completed by Dr. Papapietro on June 7, 1994, stated that Rivera was not fully or temporarily employable. Further, the assessment stated that Rivera's medical condition limited her ability to perform activities that require bending, carrying light or heavy objects, climbing a ladder, lifting heavy or light objects, and pulling/pushing heavy or light objects. It is significant to note that the revised assessment simply crossed out the initial findings from the June 29, 1993 assessment and added notations that the prior entries were in error. The physician initialed these changes on the form. (Tr. at 88.)

On February 7, 1995, Dr. Papapietro completed a medical report form provided to Rivera by a social worker at MFY Legal Services. According to this form, Dr. Papapietro last treated Rivera in February of 1995, and her asthma and hypertension was expected to last at least twelve months. The report also related that Rivera experiences difficulty breathing on exertion, occasional shortness of breath at rest, and frequent exacerbation of her asthma symptoms. (Kubitschek Decl.Ex. A.) Between October 1994 and September 1995, Rivera visited the emergency room on at least four occasions due to her asthma. (Kubitschek Decl.Ex. B; Shteyngart Decl.Ex. A.) The report went on

to state that Rivera could sit, up to eight hours at a time, could stand continuously for one hour for a total of three hours in an eight hour work day, and could walk continuously for 15 minutes, for a total of 90 minutes in an eight hour work day. Further, the report concluded that Rivera could lift or carry up to five pounds, squat, and climb up to one-third of an eight hour work day. Bending and reaching could constitute up to two-thirds of an eight hour work day. The doctor placed moderate restrictions on Rivera's exposure to stress or changes in temperature and humidity, and a total restriction on exposure to dust. The doctor also imposed mild restrictions on being at unprotected heights and being around machinery. Rivera is capable of traveling by bus or subway. (Kubitschek Decl.Ex. B.)

## II. DISCUSSION

Plaintiff argues for remand or reversal based on four grounds—that the ALJ did not adequately inform her of her right to counsel, that the ALJ failed to conduct a full and fair inquiry, that the Commissioner's decision is not supported by substantial evidence, and that the case should be remanded based on new evidence.

A district court's review of a denial of benefits is limited. The court may not determine de novo whether the claimant is actually disabled. Rather, the court must affirm the Commissioner's final determinations so long as they are supported by substantial evidence in the record and are not the product of legal error. 42 U.S.C. § 405(g); *see also Cruz v. Sullivan,* 912 F.2d 8, 11 (2d Cir.1990).

### A. Failure to Adequately Inform of Right to Counsel

Plaintiff contends that the ALJ failed to adequately inform her of her right to counsel. The right to representation during a disability hearing has been codified in 20 C.F.R. § 404.916(b)(2). The ALJ has a duty to ensure that the claimant is aware of the right to counsel at the proceedings. *Robinson v. Secretary of Health and Human Servs.,* 733 F.2d 255, 257 (2d Cir.1984). In

the instant case, a Notice of Hearing dated April 18, 1994, was sent to Rivera. The notice included a section titled "Representation and Fees for Representation," which explained that Rivera was entitled to designate a person to represent her at the hearing. (Tr. at 16.) Further, in the ALJ's opening statement at the hearing, the following transpired:

> ALJ: In the Notice of Hearing, you were advised of your right to be represented by a lawyer or any other representative of your choice. It is not necessary that you have such formal representation to proceed with this hearing. You may do so alone. Since you have appeared alone today, does that mean you wish to proceed without a lawyer?
>
> CLMT: Yes, sir.

(Tr. at 19.)

Because Rivera was notified of her right to representation prior to the hearing and because she acknowledged at the hearing that she wished to proceed alone, the Court finds that she was adequately informed of her right to representation.[6]

**B. Failure to Conduct a Full and Fair Hearing**

■ Prior to determining if the Commissioner's decision is supported by substantial evidence, a reviewing court must be able to establish that the claimant received a full and fair hearing. *Cruz*, 912 F.2d at 11; *Echevarria v. Secretary of Health and Human Servs.*, 685 F.2d 751, 755 (2d Cir.1982). In making this determination, where a claimant appears *pro se*, the Court must consider whether the ALJ fulfilled his duty to careful-

ly and conscientiously probe and explore all relevant facts. *Echevarria*, 685 F.2d at 755. In a *pro se* case, the ALJ also has a heightened duty to "affirmatively develop" the record to ensure the claimant's rights are adequately protected. *Cruz*, 912 F.2d at 11; *Echevarria*, 685 F.2d at 755.

In *Echevarria*, the court held that as a result of "significant gaps in the record, the claimant did not receive a fair and adequate hearing." *Echevarria*, 685 F.2d at 755. The gaps in *Echevarria* included failure to adequately explore the nature and extent of the claimant's subjective symptoms and failure to direct claimant to obtain a more detailed statement from the treating physician among others.

**1. Failure to Inform Plaintiff of Deficiencies in Evidence**

■ In the case at bar, the Medical Assessment of Employability completed by Dr. Papapietro, Rivera's treating physician, lacked key information such as a conclusion as to whether Rivera was fully or temporarily employable and whether there were any restrictions on her walking or standing. (Tr. at 75.) Where the medical information supplied by the treating physician is insufficient to make a determination of employability, the ALJ has a duty to inform a *pro se* claimant of the inadequacies and the remedial action required. 20 C.F.R. § 404.946(a); *see also Cruz*, 912 F.2d at 12; *Hankerson*, 636 F.2d at 896. While the information provided by Rivera's treating physician was deficient, there is no evidence in the hearing transcript

**6.** The present case is distinguishable from *Hankerson v. Harris*, 636 F.2d 893, 894 (2d Cir.1980), cited by Plaintiff. In that case, the ALJ choose to continue the proceedings despite the claimant's statement at the hearing that "he 'was in favor of getting' a lawyer but that he had not had time to do so because of deaths in his family." *Hankerson*, 636 F.2d at 894. In the instant case, there is no evidence that Rivera sought to secure representation; also Rivera never informed the ALJ that she intended to be represented. As a result, Rivera is not entitled to a reversal or rehearing on this ground. *See Barrera v. Secretary of Health and Human Servs.*, 872 F.Supp. 24, 27 (E.D.N.Y.1995) (finding that claimant was adequately informed of her right to counsel in the

Notice of Hearing, among other things, but remanded on other grounds); *cf. Gold v. Secretary of Health, Educ. and Welfare*, 463 F.2d 38, 43 (2d Cir.1972) (finding that claimant was not adequately informed of her right to counsel because the ALJ "did not suggest when [claimant] appeared alone, that she obtain legal aid" though the notice of hearing stated the claimant could bring counsel); *Alvarez v. Bowen*, 704 F.Supp. 49, 52 (S.D.N.Y.1989) (holding that claimant did not "knowingly and voluntarily" waive his right to counsel when the claimant unsuccessfully attempted to obtain counsel and ALJ misunderstood his explanation to mean he was willing to proceed without counsel).

that the ALJ notified Plaintiff of the deficiency.

### 2. *Failure to Elicit Adequate Testimony Regarding the Nature of Past Relevant Work*

■ In determining whether a claimant can perform her past relevant work, "the Commissioner normally focuses in the first instance on the physical demands of the job previously performed by the claimant." *Rivera v. Sullivan*, 771 F.Supp. 1339, 1351 (S.D.N.Y.1991). The court in *Rivera v. Sullivan* noted the difficulties presented when the physical requirements of the past job differ from those requirements usually encountered in that category. Therefore, the claimant must prove her inability to perform both her particular past relevant work *and* the demands generally imposed by that type of work. *Rivera v. Sullivan*, 771 F.Supp. at 1352 (citing SSR 82–61 (1982) 836, 838).

In the case at bar, Rivera's past relevant employment was that of a stock clerk. (Tr. at 22–23.) The ALJ failed to elicit testimony regarding how much time Plaintiff spent walking or standing in her previous stock clerk positions. This is important because Dr. Balinberg, the physician who examined Rivera at the Commissioner's request, concluded that Rivera had a limited ability to walk long distances. (Tr. at 79.) The ALJ also failed to inquire if such work involved exposure to dust which exacerbated Rivera's asthma. No evidence in the record shows that the ALJ elicited information about the physical demands usually placed on a stock clerk. As a result of this gap in the record, it is impossible to determine if Rivera would have been able to prove an inability to perform the duties usually required of a stock clerk.

### 3. *Failure to Inquire Fully About the Scope of Plaintiff's Daily Activity*

The ALJ failed to inquire into the scope of the activities in which Rivera currently engages. When Plaintiff testified that she went "window shopping a little bit," (Tr. at 27), the ALJ failed to ask how far she walks when window shopping or how frequently she needed to rest. This is a significant omission

in light of the fact that Dr. Papapietro's assessment fails to draw a conclusion regarding Rivera's ability to walk and Dr. Balinberg conclusion that Rivera had a limited ability to walk long distances. (Tr. at 75, 86) Further, when Plaintiff stated that she was able to "buy little bits" of groceries but needed to have her son carry the bags home, the ALJ failed to inquire into how Rivera traveled to the grocery store or the weight or number of items usually in the bags to determine a possible weight restriction. Again, this information becomes important in light of the deficiencies in the treating physician's assessment.

Because of the failure to inform the Plaintiff of deficiencies in the evidence, failure to elicit adequate testimony regarding past relevant work, and failure to make adequate inquiries into the scope of Plaintiff's daily activities, the Court finds that the Plaintiff did not receive a full and fair hearing. *See, e.g., Echevarria*, 685 F.2d 751.

### C. Conclusions Not Supported by Substantial Evidence

■ "The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the Secretary, and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having 'rational probative force.'" *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir.1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 230, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938)). In order for the Commissioner's decision to be affirmed, the Court must find that the Commissioner's conclusions are supported by substantial evidence. *Cruz*, 912 F.2d at 11. "Substantial evidence is defined as 'more than a mere scintilla.' It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)).

In order to determine whether a claimant is disabled, the Commissioner performs a five step analysis. First, the Commissioner

determines if the claimant is engaged in "substantial gainful activity." If not, the Commissioner next considers the effect of the claimants mental or physical impairments. If more than one impairment exists, the combined effect of these impairments will be considered. The impairments must be severe and expected to last at least twelve months. If, such an impairment exists, the Commissioner then must determine, based solely on the medical evidence, if the ailment is listed in 20 C.F.R. Part 404 Subpart P Appendix 1. If the impairment is listed in the Appendix, the Commissioner considers the claimant to be disabled. If the impairment is not listed in the Appendix, the Commissioner considers the claimant's current work activity, the severity of the impairment(s), the claimant's "residual function capacity,[7] past work, age, education, and work experience." Finally, if the claimant is found to be unable to perform his past work than the Commissioner considers whether there is other work the claimant could perform. 20 C.F.R. § 416.920(a); *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982). The burden is on the Plaintiff to show the first four elements and the Commissioner bears the burden of showing the fifth element. *Berry,* 675 F.2d at 467.

Here, the ALJ found that Rivera was not engaged in substantial gainful activity and that she had an impairment, (Tr. at 13–14), which satisfies the first two prongs. The third prong was not satisfied as the impairment was not listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Hence, the ALJ continued, as it should have, to the fourth prong. The ALJ found that Rivera's residual function capacity was to do light work and that her past work did not require her to do more than light work. Accordingly, the ALJ concluded Rivera was not disabled.[8] The Court disagrees.

7. "Residual function capacity is what [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545.

8. Subsequently, ALJ Hecht found that the Plaintiff was disabled. *See supra* note 2.

## 1. Conclusion that Plaintiff has the Residual Function Capacity to Perform the Full Range of Light Work

▮ The ALJ concluded that the Plaintiff "is capable of performing the full range of light work." (Tr. at 14.) The regulations define light work as work

> involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing.... To be considered capable of performing a full or wide range of light work [claimant] must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b). Given this definition, the ALJ's conclusion regarding Rivera's ability to perform the full range of light work is not consistent with Dr. Balinberg's conclusion that Plaintiff had a "limited ability to walk long distances." (Tr. at 79.) Dr. Balinberg's conclusion directly contradicts the ALJ's conclusion that Rivera could perform the full range of light work which may include "a good deal of walking." 20 C.F.R. § 404.1567(b). Further, this conclusion cannot be supported by Dr. Papapietro's June 1993 assessment as the doctor failed to complete the section regarding Plaintiff's ability to walk.[9] (Tr. at 75.) Moreover, Plaintiff's testimony at the hearing shows evidences of her inability to walk long distances as stated by Dr. Balinberg. Plaintiff testified that after walking three blocks she must stop to catch her breath. (Tr. at 27.) None of the evidence before the ALJ disputed this testimony or Dr. Balinberg's conclusion. Accordingly, the Court finds that the ALJ's conclusion that Plaintiff can perform the full range of light work is not supported by the evidence in the record.

9. Dr. Papapietro subsequently changed this assessment to state that his prior conclusions that Rivera did not suffer from any medical conditions that would prevent her from bending, carrying light or heavy objects, climbing a ladder, lifting heavy or light objects, or pulling/pushing heavy or light objects were erroneous. (Tr. at 88.)

### 2. Conclusion that Plaintiff Can Perform Past Relevant Work

■ The ALJ concluded that Plaintiff's past relevant work did not require her to perform activities "involving lifting/carrying or pulling/pushing objects weighing more than 20 pounds occasionally or 10 pounds frequently." (Tr. at 14.) The Disability Report completed by Plaintiff in July 1993, however, stated that her stock clerk job required her to lift and carry coats and that she frequently lifted and carried forty pounds. (Tr. at 59.)

Defendant alleges that Rivera testified at the hearing that her stock clerk position required her to lift ten to fifteen pounds. (Def.Mem.Law at 3.) The Court finds no support for this allegation in the record. The testimony in question appears as follows:

Q: How heavy were the items that you were required to lift?

A: Maybe 15, 10—we always had somebody (INAUDIBLE)

(Tr. at 22.) Unlike counsel for the Defendant, the Court will not speculate as to the words spoken by Plaintiff that were not captured in the hearing transcript. (Def.Mem.Law at 3.) The only evidence in the record shows that Plaintiff was required to lift and carry forty pounds. (Tr. at 59.) Further, as previously mentioned, there is no evidence in the record regarding the usual physical requirements of stock clerk positions. Moreover, the *Dictionary of Occupational Titles* ("DOT") classifies stock clerk work as heavy work. 1 U.S. Department of Labor, *Dictionary of Occupational Titles*, 202 (4th ed. 1991). The DOT defines heavy work as work

[e]xerting 50 to 100 pounds of force occasionally, and/or 25 to 50 pounds of force frequently, and/or 10 to 20 pounds of force constantly to move objects.

2 U.S. Department of Labor, *Dictionary of Occupational Titles*, 1013 (4th ed. 1991). This is consistent with the Secretary's definition of heavy work as work

involv[ing] lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to fifty pounds.

20 C.F.R. § 404.1567(d). Accordingly, the Court finds that the ALJ's conclusion that Rivera's past relevant work did not involve activities which she could not perform is not supported by substantial evidence.[10]

As the ALJ's conclusions regarding Plaintiff's ability to engage in the full range of light work and to perform her past relevant work are not based on substantial evidence, the ALJ's decision that Plaintiff is not disabled cannot be affirmed by the Court.

### D. Introduction of New Evidence

■ Plaintiff argues that the case should be remanded in light of new evidence that was not presented at the hearing. To assist reviewing courts in determining whether a case should be remanded under 42 U.S.C. § 405(g) to consider new evidence, the Second Circuit has devised a three prong test. *See Jones v. Sullivan,* 949 F.2d 57, 60 (2d Cir.1991). The claimant must show that the evidence is

(1) "new" and not merely cumulative . . . , (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative. . . . The concept of materiality requires, in addition, a reasonable possibility

10. This is instrumental because if Rivera cannot perform her past relevant work, a Grid analysis will be performed using Rivera's age, education, work experience. 20 C.F.R. Part 404, Subpart P, App. 2 § 200.00(a). The Grid is used "in cases which cannot be evaluated on medical considerations alone, where an individual with a severe medically determinable physical or mental impairment(s) is not engaging in substantial gainful activity and the individual's impairment(s) prevent the performance of his or her vocationally past relevant work." *Id.* There is no dispute that the Plaintiff is not gainfully employed or that the claimant suffers from asthma and hyperten-

sion. Because the Commissioner will consider Rivera to be "closely approaching advanced age" (which is defined as those between the ages of 50 and 55, 20 C.F.R. Part 404, Subpt. P, App. 2 § 201.00(g)), and unskilled, ("[u]nskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength." 20 C.F.R. § 404.1568(a)), even if she is a high school graduate she will be considered disabled if she is found to have only the residual function capacity to perform sedentary work. 20 C.F.R. Part 404, Subpt. P, App. 2, Table No. 1.

that the new evidence would have influenced the Secretary to decide claimant's application differently.... Finally claimant must show (3) good cause for her failure to present the evidence earlier. *Jones v. Sullivan* 949 F.2d at 60 (citations omitted); *see also Tirado v. Bowen,* 842 F.2d 595, 597 (2d Cir.1988); *Sharpe v. Sullivan,* 802 F.Supp. 938, 942 (W.D.N.Y.1992) (finding evidence of subsequent treatment "clearly probative" of claimant's credibility regarding complaints of pain).

In the present case, the "new" evidence submitted to the Court includes a revised medical assessment form completed by Dr. Papapietro dated June 7, 1994.[11] (Tr. at 88.) The June 7, 1994 assessment is "new" in that it is in direct conflict with the June 29, 1993 medical assessment completed by Dr. Papapietro and submitted for consideration at the hearing. Further, the assessment states that the conclusions in the June 1993 assessment were in error. Moreover, it supports Plaintiff's testimony about her subjective symptoms which the ALJ found not to be "fully credible." (Tr. at 14.) It also dictates additional restrictions not imposed by Dr. Balinberg. As this assessment calls into question the previous assessment and compels additional restrictions on Plaintiff, it is not "merely cumulative."

This information is material in that the ALJ relied on the allegedly erroneous June 1993 evaluation in reaching his conclusion. It is also material because it is likely that the ALJ would have decided the claim differently had this information been available to the ALJ at the hearing. Finally, Rivera had good cause not to introduce this evidence at the hearing because the revised assessment did not exist at the time of the hearing. *Morgan v. Chater,* 913 F.Supp. 184, 188 (S.D.N.Y.1996) (finding good cause where the reports did not exist at the time of the decision); *Abreu–Mercedes,* 928 F.Supp. at 391 (finding good cause where a procedure took place after the administrative hearing, also finding that other evidence was not new

because the ALJ was fully aware of the evidence at the hearing).

However, the "new" evidence is insufficient to support a remand of this case for rehearing by the Commissioner because the Appeals Council before entering the final decision considered it when affirming the ALJ's decision. (Tr. at 4.)

### III.   CONCLUSION

In light of the gaps in the record and the lack of substantial evidence, the Commissioner's decision is vacated and remanded for further proceedings consistent with this Memorandum & Order. Both motions for judgment on the pleadings are denied.

SO ORDERED.

---

11. The Plaintiff also submits two emergency records dated 10/28/95, and 11/12/95. (Shteyngart Decl.) However, these visits occurred well after the hearing and do not constitute new evidence. *Abreu–Mercedes v. Chater,* 928 F.Supp. 386, 391

(S.D.N.Y.1996). She also submitted another report from Dr. Papapietro. (Kubitschek Decl.Ex. A.) This report simply expands on information in the June 1994 report and cannot be considered material.